**HIGHLANDS INSURANCE COMPANY, et al., Plaintiffs,**

v.

**The CELOTEX CORPORATION, et al., Defendants.**

**Civ. A. No. 89–2258.**

United States District Court, District of Columbia.

July 31, 1990.

Daniel C. Sauls, Steptoe & Johnson, Christine Angeline Nykiel, James Patrick Schaller, Jackson & Campbell, P.C., Washington, D.C., for plaintiffs.

Karen Lee Bush, Susan Scharfstein, Jerold Oshinsky, Anderson, Kill, Olick & Oshinsky, James Wilson Greene, William E. Nowakowski, Bromley, Brown & Walsh, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

### I. *Introduction*

In this declaratory judgment action, *see* 28 U.S.C. § 2201(a) (1988), plaintiffs [1] seek a declaration that the upper layer excess insurance policies they issued to defendants the Celotex Corporation and Carey Canada, Inc.,[2] between 1977 and 1983 exclude coverage for all asbestos-related disease claims. Shortly after filing their complaint, plaintiffs moved for summary judgment on the ground that a prior decision of this Court collaterally estops Celotex and Carey Canada from arguing that the asbestos-related exclusions in these policies have a narrower scope. The motion has been fully briefed.[3]

### II. *Background*

### A. *The Earlier Litigation*

Carey Canada, an asbestos mining company, is a wholly-owned subsidiary of Celotex, an asbestos manufacturing company, which in turn is a wholly-owned subsidiary of its Florida-based parent, Jim Walter Corporation. In 1983 and 1986, respectively, Carey Canada and Celotex brought declaratory judgment actions against several insurance companies that had issued lower level excess policies to Jim Walter in 1977 and 1978.[4] Those actions, which were consolidated and tried before this Court in February 1989, were the "flip side" of the present action. In them, Carey Canada and Celotex sought a declaration that the policies' asbestos-related exclusions barred only those claims based on the narrowly defined, medical condition known as asbestosis.

The exclusions at issue in that case [hereinafter "Exclusions (1), (2) and (3)"] read as follows:

(1) [T]his policy shall not apply to claims made against the insured arising out of Asbestosis or any similar condition caused by Asbestos;[5]

(2) [I]t is understood and agreed that any bodily injury or property damage claim or claims arising out of *all asbestosis operations* is excluded from the policy;[6] and

---

1. Plaintiffs are Highlands Insurance Company, Old Republic Insurance Company, AIU Insurance Company, Granite State Insurance Company, and National Union Life Insurance Company of Pittsburgh, Pa.

2. Also named as defendants are the Central National Insurance Company of Omaha, Employers Mutual Casualty Company, Federal Insurance Company, and the Protective National Insurance Company of Omaha. These defendants also issued upper layer excess policies to Celotex and Carey Canada. Plaintiffs evidently named them as defendants in order to preserve the diversity of citizenship necessary to our jurisdiction. *See* 28 U.S.C. § 1332(a). The present motion for summary judgment does not address their policies.

3. Today's ruling on the motion for summary judgment renders plaintiffs' and defendant insurance companies' motion for a protective order moot.

4. *One of these insurers was National Union, a plaintiff in the present action.*

5. Home policy no. HEC9631289 (effective 10/1/77–10/1/78).

6. National Union policy no. 118977 (effective 10/1/77–10/1/78).

(3) [T]his policy shall not apply to any liability imposed upon the insured arising out of ASBESTOSIS.[7]

Early on in the litigation, this Court held that the meaning of the word "asbestosis," as used in the policies, was ambiguous. *See Carey Canada, Inc. v. California Union Insurance Co.*, 83-1105, Mem. Op. at 9–10 (May 7, 1985) (Pratt, J.). Accordingly, the parties engaged in lengthy and voluminous discovery concerning their understanding of this term at the time the contracts were made, and the Court heard and received extensive evidence on this issue during a seven-day trial.[8]

On June 1, 1989, we granted judgment for the defendant insurance companies. *See Carey Canada, Inc. v. California Union Insurance Co.*, 720 F.Supp. 1018, 1026 (D.D.C.1989) (Pratt, J.). We found "by clear and convincing evidence that all parties to [the policies] understood and interpreted them to exclude all asbestos-related disease claims, not just the single disease asbestosis." *Id.* at 1026. Specifically, we found that, "in using the term 'asbestosis,'" the parties "objectively intended" to exclude "'all asbestos-related disease claims.'" *Id.* at 1025. Our conclusion that Carey Canada and Celotex shared this understanding was based on specific find-

ings of fact concerning: (1) their treatment of loss data during the years 1978–1982;[9] (2) their interpretation of the Aetna exclusion, which they read to exclude all asbestos-related disease claims as of October 1977; (3) their notice practices from October 1977 until April 1983;[10] (4) their 1980 and 1981 Annual Reports to Stockholders;[11] and (5) the understanding and use of the term "asbestosis" by their exclusive retail broker, Rollins Burdick Hunter ("RBH"). *See id.* at 1022–24.

## B. *The Present Litigation*

The fourteen exclusion clauses at issue in the present case are similar or identical to Exclusions (1), (2), and (3) set out above. *See supra* pp. 29–30. National Union policy no. 1189778 (effective 10/1/77–10/1/78) contains an exclusion clause identical to Exclusion (2). The exclusion clauses in National Union policy nos. 1226062 (effective 10/1/80–10/1/81), 1185371 (effective 10/1/81–10/1/82), and 1185372 (effective 10/1/81–10/1/82) and Highlands policy no. SR40746 (effective 10/1/81–10/1/82) are identical to Exclusion (3). Eight of the remaining nine policies at issue contain exclusion clauses very similar to Exclusion (3).[12] The exclusion clause in the remain-

7. National Union policy no. 1226411 (effective 10/1/79–10/1/80). The exclusion in Columbia Casualty policy no. RDX 416-93-97 (effective 10/1/78–10/1/79) was virtually identical.

8. Discovery involved production of tens of thousands of pages of documents and included more than 40 depositions. At trial, which was limited to the scope of the exclusion clauses and the affirmative defenses of mistake and estoppel, *Carey Canada, Inc. v. California Union Ins. Co.*, 720 F.Supp. 1018, 1018 (D.D.C.1989) (Pratt, J.), approximately 1400 exhibits were put into the record, and the trial transcript itself consisted of 1187 pages.

9. Jim Walter continued after 1977 to use the term "asbestosis" to mean all asbestos-related disease claims.... Applications for insurance sent to the carriers (and Jim Walter) by RBH [Rollins Burdick Hunter, Jim Walter's exclusive insurance broker] for each of the years *from 1978 through 1982* included claims paid by [Carey Canada and Celotex] for alleged cancer but identified as product losses excluding "asbestosis losses."
*Id.* at 1022 (emphasis added).

10. On April 6, 1983, just a few days before the present suits were filed, Emerton [of Jim Walter's legal department] for the first time instructed Herrmann [Assistant Manager of Jim Walter's Corporate Insurance Department] "to begin" giving notice of asbestos-related disease claims to *carriers who had written excess coverage,* unless it was "absolutely clear from the complaint that the claim was for asbestosis alone." For the first time, Herrmann was advised to put *post-October 1977 carriers* on notice of possible liability.
*Id.* at 1023 (emphasis added).

11. These Annual Reports stated that "coverage for asbestos-related diseases [had] been excluded from policies" issued after September 30, 1977. We held that this statement constituted an admission "that the policies at issue [did] not cover any asbestos-related disease claims." *Id.* at 1023.

12. "[T]his policy shall not apply to any liability arising out of ASBESTOSIS and related diseases arising out of asbestos products." National Union policy nos. 9602859 (effective 10/1/82–10/1/83) and 9605640 (effective 10/1/83–

ing policy, Old Republic no. OZX11577 (effective 10/1/81–10/1/82), reads:

> [T]he company shall not indemnify the insured for any sum which the insured shall be obligated to pay by reason of any liability for bodily injury, personal injury or property damage caused by or arising out of asbestosis....

All of these policies were negotiated on behalf of Jim Walter by RBH, its exclusive retail broker in securing excess liability coverage.[13] *See Carey Canada v. California Union,* 720 F.Supp. at 1020. Moreover, one of the National Union policies, no. 1189778, was negotiated on behalf of National Union by Kandis Pinkstaff in the same year that she negotiated policy no. 118977, which was at issue in the earlier litigation and contained an identical asbestos-related exclusion clause. Finally, ten of the fourteen policies were issued prior to April 1983.[14] Having set out the relevant facts, we turn now to the merits of the present motion.

### III. *Discussion*

#### A.

Under the doctrine of collateral estoppel, or issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza,* 464 U.S. 154, 158, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984) (citation omitted). The doctrine "serves to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Id.* at 158, 104 S.Ct. at 571 (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)). Thus, it not only recognizes earlier findings as conclusive, but also precludes "a party

... from attempting a second time to prove a fact that he sought unsuccessfully to prove in a prior action." *Yates v. United States,* 354 U.S. 298, 336, 77 S.Ct. 1064, 1085, 1 L.Ed.2d 1356 (1957) (citation omitted).

Three conditions must be satisfied in order for the doctrine to apply: (1) the issue must have been contested by the parties and submitted for determination by the court; (2) the issue must have been "actually and necessarily determined" by the court; and (3) preclusion must not work an unfairness. *Jack Faucett Associates v. American Telephone & Telegraph Co.,* 744 F.2d 118, 125 (D.C.Cir.1984) (citations omitted), *cert. denied,* 469 U.S. 1196, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985). Plaintiffs argue that these conditions have been met with respect to every issue essential to their case. With the exception of National Union policy no. 1189778, we disagree. However, we do agree with plaintiffs that certain facts pertinent to this action were conclusively established in *Carey Canada v. California Union,* and that Celotex and Carey Canada are precluded from relitigating those issues here.

#### B.

■ As we held in the earlier litigation, the asbestos-related exclusions at issue "are ambiguous on their face." *Carey Canada, Inc. v. California Union Insurance Co.,* 708 F.Supp. 1, 4 (D.D.C.1989) (Pratt, J.). Therefore, resort to extrinsic evidence of the parties' intent is required. *See id.* at 5. With the exception of National Union policy no. 1189778, the intent of plaintiff insurers with respect to the exclusion clauses presently at issue was not addressed in the earlier litigation, *see generally Carey Canada v. California Un-*

---

10/1/84); Highlands policy nos. SR40905 (effective 10/1/82–10/1/83) and SR41122 (effective 10/1/83–10/1/84); *see* Granite State policy nos. 6682-3764 (effective 10/1/82–10/1/83) and 6683-4163 (effective 10/1/83–10/1/84) (virtually identical); AIU policy nos. 75-101718 (effective 10/1/82–10/1/83) and 75-103564 (effective 10/1/83–10/1/84) (virtually identical).

**13.** Although Granite State's policies do not reveal this fact, we may safely assume that RBH negotiated them, since Celotex and Carey Canada have not indicated otherwise.

**14.** In our earlier decision, we made no specific findings with respect to Celotex and Carey Canada's understanding and use of the term "asbestosis" after this date. *See Carey Canada v. California Union,* 720 F.Supp. at 1023-24.

*ion,* 720 F.Supp. 1018, and there is no evidence of plaintiff insurers' intent before us now. Accordingly, except with respect to National Union policy no. 1189778, summary judgment is not possible at this time. *See Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (parties are free to litigate points not at issue in first proceeding); *cf. National Savings & Trust Co. v. Rosendorf,* 559 F.2d 837, 840 (D.C.Cir.1977) (where court in first action did not consider issue essential to resolution of second action, summary judgment could not be granted on basis of collateral estoppel).

### C.

■ We agree with plaintiffs, however, that Celotex and Carey Canada are precluded from contesting that, from October 1, 1977, through April 5, 1983, they understood the asbestos-related exclusions in plaintiffs' policies to exclude all asbestos-related disease claims. We found in the earlier action, "by clear and convincing evidence," that these defendants believed that coverage for asbestos-related diseases had been excluded from their insurance policies beginning October 1, 1977. *See Carey Canada v. California Union,* 720 F.Supp. at 1023, 1025. It was not until April 6, 1983, just a few days before *Carey Canada v. California Union* was filed, that these defendants began asserting that exclusion clauses such as those in plaintiffs' policies excluded only those claims based on asbestosis alone. *Id.* at 1023. These and other findings on this issue [15] apply with equal force in this case, and we will not permit these defendants to challenge or contradict them now. Based on these findings, we conclude, as we did in *Carey Canada v. California Union,* that Celotex and Carey Canada understood the pre-April 6, 1983 exclusion clauses in plaintiffs' policies

to exclude coverage for all asbestos-related disease claims. *See Montana v. United States,* 440 U.S. 147, 159–61, 99 S.Ct. 970, 976–977, 59 L.Ed.2d 210 (1979) (finding no "changes in fact essential to [first] judgment"); *American Medical International, Inc. v. Secretary of Health, Education & Welfare,* 677 F.2d 118, 120–21 (D.C.Cir. 1981) (finding that "first ruling had not been 'predicated' on facts peculiar to the contracts there in issue").

Application of the doctrine of collateral estoppel, or issue preclusion, is particularly appropriate in this context. Because the parties to the prior lawsuit actively contested Celotex and Carey Canada's understanding of the word "asbestosis," our findings on that issue "bear[ ] sufficient reliability to preclude subsequent inquiry; and re-litigation of the same issue would be wasteful of judicial resources." *Stebbins v. Keystone Insurance Co.,* 481 F.2d 501, 508 (D.C.Cir.1973); *see also Commissioner v. Sunnen,* 333 U.S. at 598, 68 S.Ct. at 719; *Synanon Church v. United States,* 820 F.2d 421, 426 (D.C.Cir.1987). Moreover, those findings were necessary to our holding that the insureds read the exclusions broadly. *See Partmar Corp. v. Paramount Pictures Theatres Corp.,* 347 U.S. 89, 100, 74 S.Ct. 414, 420, 98 L.Ed. 532 (1954); *Synanon Church,* 820 F.2d at 425. Finally, application of collateral estoppel would not be unfair. Our findings in the earlier case were made after "a full and fair proceeding." *McLaughlin v. Bradlee,* 803 F.2d 1197, 1204 (D.C.Cir.1986). The stakes in that proceeding were quite high; each of the four policies at issue had a maximum exposure of five million dollars, *Carey Canada v. California Union,* 720 F.Supp. at 1019, and subsequent litigation involving upper layer excess carriers was foreseeable.[16] *See* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Proce-*

---

**15.** The specific findings to which we refer concern: (1) Jim Walter's treatment of loss data during the years 1978–1982; (2) its interpretation of the Aetna exclusion; (3) its notice practices from October 1977 until April 1983; (4) its 1980 and 1981 Annual Reports to Stockholders; and (5) the understanding and use of the term "asbestosis" by RBH. *See id.* at 1022–24; *see also supra* notes 9–11 and accompanying text.

**16.** We note that within six days of our final decision in *Carey Canada v. California Union,* Celotex and Carey Canada filed a virtually identical declaratory judgment suit against various upper layer excess insurers in Oklahoma state court.

*dure*, §§ 4423, 4424, at 221, 227 (1981) [hereinafter *Federal Practice* ]. Accordingly, Carey Canada and Celotex had a strong "incentive to," and did in fact for six years, "litigate vigorously." *Id.* § 4423, at 221. "[L]ittle good and much harm can come from allowing [them] to retry the same issues in exhausting fashion against successive [insurers]." *McLaughlin v. Bradlee*, 803 F.2d at 1204–05 (discussing rejection of "mutuality" restriction) (citation omitted).[17]

An additional factor worth noting is that Celotex and Carey Canada themselves do not seriously contend that any genuine issue of fact exists as to their understanding of the asbestos-related exclusions. Instead, their opposition emphasizes that what prevents summary judgment is the lack of evidence concerning *plaintiffs'* understanding of these exclusions in policies not at issue in the prior case.[18] Thus, they essentially concede that our previous findings concerning them are controlling in this case. *See Cutler v. Hayes*, 818 F.2d 879, 890 & n. 88 (D.C.Cir.1987); *Federal Practice, supra*, § 4417, at 160; Fed.R. Civ.P. 56(e) ("adverse party's response … must set forth specific facts showing that there is a genuine issue for trial").

Accordingly, Celotex and Carey Canada are precluded from relitigating the issue of their understanding of the asbestos-related exclusions decided against them in the prior litigation. They are bound by our findings regarding Jim Walter's post-September 1977 excess policies, which cover the following ten (10) policies: National Union policy nos. 1189778 (effective 10/1/77–10/1/78), 1226062 (effective 10/1/80–10/1/81), 1185371 (effective 10/1/81–10/1/82), 1185372 (effective 10/1/81–10/1/82), and 9602859 (effective 10/1/82–10/1/83); Highlands policy nos. SR40746 (effective 10/1/81–10/1/82) and SR40905

(effective 10/1/82–10/1/83); Granite State policy no. 6682–3764 (effective 10/1/82–10/1/83); AIU policy no. 75–101718 (effective 10/1/82–10/1/83); and Old Republic policy no. OZX11577 (effective 10/1/81–10/1/82). As for the remaining four (4) policies—National Union no. 9605640 (effective 10/1/83–10/1/84), Highlands no. SR41122 (effective 10/1/83–10/1/84), Granite State no. 6683–4163 (effective 10/1/83–10/1/84), and AIU no. 75–103564 (effective 10/1/83–10/1/84)—the parties may introduce post-April 5, 1983 evidence of Celotex and Carey Canada's understanding of the asbestos-related exclusions contained therein.

### D.

■ Finally, we hold that plaintiff National Union is entitled to summary judgment with respect to its liability for asbestos-related disease claims under policy no. 1189778. This policy's asbestos-related exclusion clause is identical to that contained in National Union policy no. 118977, a contemporaneous lower level excess policy at issue in *Carey Canada v. California Union*. Underwriter Kandis Pinkstaff negotiated both policies on behalf of National Union in 1977. At trial in the earlier case, Pinkstaff testified that "by excluding 'asbestosis operations' she intended to exclude Jim Walter's asbestos exposure." *Carey Canada v. California Union*, 720 F.Supp. at 1024–25. We gave "full credence" to this testimony, and, because the insureds' intent was the same, held that the policy excluded all asbestos-related disease claims. *Id.* at 1025, 1026. The same situation exists here. Pinkstaff's testimony is conclusive of National Union's intent with respect to policy no. 1189778, and, as we already have held, collateral estoppel precludes Celotex and Carey Canada from arguing that they read the exclusion more

---

**17.** Contrary to Celotex and Carey Canada's assertion, this is a case of defensive, not offensive, use of collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329–30, 99 S.Ct. 645, 650–651, 58 L.Ed.2d 552 (1979). Plaintiffs here seek to preclude Celotex and Carey Canada from raising an issue that they previously litigated—as plaintiffs—and lost against other insurance companies. *See id.* at 329, 99 S.Ct. at

650. Even if this were a case of offensive collateral estoppel, defendants' arguments concerning inconsistent prior judgments and new procedural opportunities are completely unpersuasive.

**18.** *See* Dfs. Rule 108(h) Statement ¶¶ 68–83; Dfs. Opp. at 4, 17–20; Bush Aff. ¶¶ 6–14, 18–22.

narrowly. *See generally McLaughlin v. Bradlee,* 803 F.2d at 1201–05.

## IV. *Conclusion*

Based on the foregoing, we hold that defendants Celotex and Carey Canada are collaterally estopped by our decision in *Carey Canada v. California Union,* 720 F.Supp. 1018, from contesting that they understood the asbestos-related exclusions in plaintiff's pre-April 6, 1983, policies to exclude all asbestos-related disease claims. We further hold that plaintiffs' motion for summary judgment is granted with respect to National Union policy 1189778. In all other respects, plaintiffs' motion is denied. An Order consistent with this Memorandum Opinion has been entered this day.