UNITED EQUITABLE INSURANCE COMPANY, Plaintiff-Appellee, v. RE-INSURANCE COMPANY OF AMERICA, INC., Defendant-Appellant.

First District (5th Division)   No. 86—2834

Opinion filed May 29, 1987.—Rehearing denied July 23, 1987.

Michael P. Connelly and William E. Snyder, both of Chadwell & Kayser, Ltd., of Chicago, for appellant.

Duane C. Quaini, Kirk R. Ruthenberg, and Roger K. Heidenreich, all of Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant, Reinsurance Company of America, appeals from an order entering summary judgment in favor of plaintiff, United Equitable Insurance Company, on count II of its complaint. Defendant contends that summary judgment was improper.

Prior to October 31, 1981, United Fire Insurance Company (United Fire) issued property and casualty insurance policies through Transco Insurance Services and Transre Insurance Services (collectively referred to as Transco). Transco acts as an underwriting managing agent on behalf of insurance companies, marketing and selling insurance policies, underwriting the risks represented by those policies, collecting premiums, providing accounting services and processing claims on behalf of the insurer.

Pursuant to two separate underwriting management agreements, Transco arranged and United Fire issued numerous insurance policies between 1977 and 1981 (the United Fire/Transco policies). In the fall of 1981, United Fire was directed by the New York Department of Insurance to cease writing property and casualty insurance policies. Under a reorganization plan, United Fire was required to dispose of these policies. Accordingly, United Fire asked defendant, Reinsurance Company

of America (RCA), to reinsure the United Fire/Transco policies.[1]

United Fire submitted a reinsurance agreement between United Fire and RCA to the New York Department of Insurance for its approval (the United Fire/RCA treaty). Under the terms of the United Fire/RCA treaty, RCA agreed to reinsure United Fire for all of its liability under the United Fire/Transco policies. The New York Department of Insurance refused to approve the agreement, however, because RCA was not licensed as a primary insurance carrier in New York.[2] United Fire then asked plaintiff, United Equitable Insurance Company (United Equitable), which was admitted as a primary carrier in New York, to reinsure the policies.

United Fire represented to United Equitable that RCA would reinsure United Equitable and that United Equitable would bear no liability. Subsequently, United Equitable and United Fire entered into a reinsurance and assumption agreement (the treaty agreement). Under the treaty agreement, United Equitable reinsured 100% of United Fire's liability for the United Fire/Transco policies as of October 31, 1981, and United Fire paid a $100,000 premium to United Equitable.

United Equitable and RCA then entered into a retrocessional agreement whereby RCA agreed to reinsure United Equitable for all of its risk under the treaty agreement, which was incorporated by reference.[3] In the retrocessional agreement, United Equitable expressed its "desire to be relieved of all liability emanating from any and all individual policy claims and allocated claims expenses as would be required to be paid by them under the above Treaty Agreement." RCA was "prepared to indemnify and reimburse as a reinsurer, United Equitable Insurance Company for all individual policy claims payments, including allocated claims expenses which United Equitable Insurance Company is obligated to pay on behalf of United Fire Insurance Company under the terms and conditions of the above Treaty Agreement."

---

[1]Reinsurance is defined as:

"A contract by which an insurer procures a third person to insure him against loss or liability by reason of [the] original insurance. A contract that one insurer makes with another to protect the latter from a risk already assumed. It binds the reinsurer to pay to the reinsured the whole loss sustained in respect to the subject of the insurance to the extent to which he is reinsured." Black's Law Dictionary 1157 (5th ed.).

[2]RCA was licensed only as a reinsurer.

[3]Retrocessional agreements are agreements by which an insurance company which has agreed to reinsure a risk assigns all or a portion of that risk to a reinsurer who accepts such risk. In effect, a retrocessional agreement is reinsurance of reinsurance. *Transcontinental Underwriters Agency, S.R.L. v. American Agency Underwriters* (3d Cir. 1982), 680 F.2d 298, 299 n.2.

United Equitable assigned "all rights and privileges for the settlement and investigation of individual policy claims" to RCA. RCA has the option of incurring settlement and investigation expenses directly or reimbursing United Equitable for such expenses. United Equitable is to be reimbursed for such expenses provided that it has "in advance received permission" from RCA.

United Equitable paid a premium of $100,000 to RCA, which was the same amount United Equitable had received from United Fire. By its terms, the retrocessional agreement will expire "when all individual policy claims are settled or paid and fully reimbursed" by RCA to United Equitable.

United Fire was the primary insurance carrier on the United Fire/Transco policies. A substantial portion of the risk on these policies was backed by other reinsurance at the time the policies were transferred from United Fire to United Equitable. The only portion of United Fire's risk which was not covered by other reinsurance was 10% of the first $50,000 of loss on any one policy (the "net retention"). Thus, only $5,000 of the risk on any one policy was not backed by other reinsurance. As long as the reinsurers remained solvent and honored their obligations, United Fire ultimately would not pay more than $5,000 on any one insurance policy. United Fire, however, remained primarily liable to the policy holder for 100% of the claim amount in force on any one insurance policy. If the reinsurance previously contracted for was not available at the time of loss, United Fire was obligated to pay that reinsurer's share. United Equitable thereafter took over United Fire's risk and reinsured it through RCA.

The retrocessional agreement stated that RCA was reinsuring the full claim amount "in force" on each policy, specifically:

> "The limit of liability herein for any one individual claim shall be the claim amount that Transco/Transre had in force on individual United Fire policies; all as outlined and further clarified in Paragraph 11 of Exhibits 'A' and 'B' attached to the Treaty Agreement."

Exhibits A and B are the two underwriting management agreements between United Fire and Transco. Paragraph 11 required Transco to obtain reinsurance covering all but 10% of the first $50,000 of United Fire's risk. It is undisputed that if this previously arranged reinsurance were not available, United Fire was obligated to pay that share.

Pursuant to reinsurance agreements arranged by Transco, the Dover Insurance Company, Ltd. (Dover), reinsured portions of the United Fire/Transco policies. In the fall of 1982, Dover became insol-

vent and presently is in liquidation proceedings. As a result of Dover's insolvency, the portions of the United Fire/Transco policies reinsured by Dover are no longer covered by collectible reinsurance.[4]

Upon RCA's refusal to pay the portions of claims on the United Fire/Transco policies reinsured by Dover or to acknowledge its claims handling responsibilities, United Equitable filed a two-count complaint seeking injunctive and declaratory relief. The circuit court granted United Equitable's motion for summary judgment on count II.

The court found that United Equitable and RCA had entered into a retrocessional agreement, effective October 31, 1981, by which RCA agreed to reinsure United Equitable for all of its liability under the treaty agreement, which was incorporated therein by reference. The court also found that the language of the retrocessional agreement was not ambiguous.

The court declared that RCA is obligated under the retrocessional agreement to reimburse and indemnify United Equitable for all losses for policy claims amounts under the United Fire/Transco policies plus allocated claims expenses, including, but not limited to, the following: (a) 10% of the first $50,000 of the policy claim amount and (b) the remaining portion of the policy claim amount not covered by other valid and collectible reinsurance.

The court declared further that RCA is obligated under the retrocessional agreement to advise and give consent to United Equitable on expenditures to be incurred in the settlement or investigation of individual policy claims and to reimburse United Equitable promptly for those expenditures or to incur those expenses on its own without reimbursement from United Equitable. RCA's motion for rehearing was denied. This appeal follows.

OPINION

RCA contends that summary judgment was inappropriate because the retrocessional agreement was ambiguous regarding the extent of RCA's obligation to reimburse and indemnify United Equitable for policy claims payments made by United Equitable under the treaty agreement with United Fire. We disagree.

■■■ A contract is ambiguous if it is reasonably susceptible to being understood in more than one sense or is obscure in meaning. Whether an ambiguity exists is a question of law to be determined by the court. Where no ambiguity is present, the meaning of the agree-

---

[4]United Equitable has represented that another reinsurer of the United Fire/Transco policies also is in liquidation.

ment and the intent of the parties must be ascertained from the language of the contract. *Boise Cascade Home & Land Corp. v. Utilities, Inc.* (1984), 127 Ill. App. 3d 4, 9, 468 N.E.2d 442.

The retrocessional agreement recited United Equitable's intention "to be relieved *of all liability emanating from any and all individual policy claims and allocated claims expenses as would be required to be paid by them under the above Treaty Agreement.*" (Emphasis added.) RCA, for its part, stated its willingness "to indemnify and reimburse as a reinsurer, United Equitable Insurance Company *for all individual policy claims payments, including allocated claims expenses which United Equitable Insurance Company is obligated to pay on behalf of United Fire Insurance Company under the terms and conditions of the above Treaty Agreement.*" (Emphasis added.)[5] Under the treaty agreement (the reinsurance and assumption agreement between United Equitable and United Fire), United Equitable accepted 100% of United Fire's liability for the United Fire/Transco policies as of October 31, 1981.

The language of the retrocessional agreement leaves no doubt that RCA agreed to compensate United Equitable for "all individual policy claims payments" which United Equitable was required to pay on behalf of United Fire. This interpretation is consistent with United Equitable's assignment of "all rights and privileges for the settlement and investigation of individual policy claims" to RCA, United Equitable's obligation to obtain prior authorization from RCA to be entitled to reimbursement for expenses incurred in investigating and settling claims, United Equitable's payment of the same premium to RCA which United Equitable had received from United Fire and the parties' express understanding that the agreement will expire "when all individual policy claims are settled or paid and fully reimbursed" by RCA to United Equitable.

Notwithstanding the foregoing, RCA maintains that under the retrocessional agreement, it is responsible only for the "net line retention," or 10% of the first $50,000 of loss on any one claim. In support of this interpretation, RCA cites the third paragraph of the retrocessional agreement which, as we have noted, states:

"The limit of liability herein for any one individual claim shall be the claim amount that Transco/Transre had in force on indi-

---

[5]Although the phrase "allocated claims expenses" is not defined in the retrocessional agreement, it may mean that to the extent expenses can be attributed to the investigation or settlement of a particular policy claim, RCA is ultimately liable for the payment thereof. This is the circuit court's interpretation which, we may add, RCA has not challenged on appeal.

vidual United Fire policies; all as outlined and further clarified in Paragraph 11 of Exhibits 'A' and 'B' attached to the Treaty Agreement."

The "claim amount that Transco/Transre had in force" is the entire policy amount, since Transco was the underwriting manager responsible for issuing these policies for United Fire, which was liable for the entire policy amount. Exhibits A and B are the underwriting management agreements between Transco and United Fire. Paragraph 11, as noted earlier, required Transco to obtain reinsurance covering all but 10% of the first $50,000 of United Fire's risk. Paragraph 11, however, did not limit United Fire's (or United Equitable's) potential liability to the net line retention. RCA conceded in its answer to United Equitable's complaint that if any of the reinsurance previously contracted for was not available at the time of loss, United Fire (and thus United Equitable) would be obligated to pay that reinsurer's share.

In our judgment, paragraph 11 of the underwriting management agreements contains no limitation on any party's liability. Rather, the language of paragraph 11 merely describes the liability undertaken by United Fire, reinsured by United Equitable and passed through United Equitable to RCA.[6]

■ The intent of parties to a contract must be determined with reference to the contract as a whole, not by reference to particular words or isolated phrases, but by viewing each part in light of the others. (*La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 381, 370 N.E.2d 188.) We agree with United Equitable that RCA's construction "depends upon taking a phrase of the Retrocessional Agreement out of context and assigning to it a meaning it cannot possibly have in light of the rest of the contract." RCA's construction is wholly inconsistent with RCA's unqualified assumption of United Equitable's liability, RCA's right to exercise control over the investigation and settlement of claims, RCA's receipt of the same premium from United Equitable that United Equitable had received from United Fire and the circumstances under which the agreement will terminate.

RCA contends in the alternative that even where an agreement does not appear to be ambiguous on its face, the court may consider parol and extrinsic evidence in determining whether an ambiguity actually exists. Although a few appellate court opinions appear to support

---

[6]The paragraph in the retrocessional agreement on which RCA relies for its interpretation appears in a section entitled "Description of Treaty Agreement," which describes the liability United Equitable had assumed from United Fire.

this proposition (the cases are collected in *Sunstream Jet Express, Inc. v. International Air Service Co.* (7th Cir. 1984), 734 F.2d 1258, 1265-68), we will follow the rule laid down by our supreme court in *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791.

There, the court held that where a written agreement is clear and explicit, the court must enforce it as written, and both the meaning of the instrument and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or other extrinsic aids or of evidence of what the parties may have understood as to the meaning of the language. 104 Ill. 2d 317, 323, 472 N.E.2d 791. See also *Sheridan v. James W. Rouse & Co.* (1982), 109 Ill. App. 3d 841, 846-47, 441 N.E.2d 647.

We believe that the retrocessional agreement is clear and explicit. Accordingly, under the rationale of *Rakowski v. Lucente*, we may not consider parol evidence or extrinsic aids or evidence of what the parties may have understood as to the meaning of the language. The judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and PINCHAM, JJ., concur.