**Thomas K. STAT, Plaintiff,**

v.

**AVENUE GROUP, INC., and PHH Group, Inc., Defendants.**

**PHH CORPORATION and PHH Environments Corporation, Counterplaintiffs,**

v.

**Thomas K. STAT, Counterdefendant.**

**No. 88 C 5287.**

United States District Court, N.D. Illinois, E.D.

Aug. 1, 1990.

---

**570**

Jay A. Canel, Peter M. King, Jay A. Canel, P.C., Chicago, Ill., for plaintiff.

Howard D. Lieberman, Peter B. Newton, William S. Ettelson, Neal, Berber, Eisenberg & Lurie, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, Thomas K. Stat ("Stat"), originally filed this action in the Chancery Division of the Circuit Court of Cook County, Illinois, seeking a declaration of the rights and liabilities of the parties under an employment agreement and bonus agreement. Defendants, Avenue Group, Inc., and PHH Group, Inc.[1] (collectively, "PHH"), subsequently removed the action to this Court based on diversity of citizenship. Stat and PHH have now filed cross-motions for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Neither party has raised a genuine issue of material fact. For the reasons set forth below, Stat's motion for partial summary judgment is granted in part and denied in part and PHH's motion for partial summary judgment is granted in part and denied in part.

### I. FACTS

For the purposes of these motions, we recount the relevant, undisputed facts. On May 30, 1986, Stat contemporaneously entered into an Employment Agreement and a Bonus Agreement with PHH. Stat's term of employment under the agreement extended through June 20, 1989. Stat was the only Avenue Group employee to receive an employment agreement from PHH Group.

---

1. PHH Corporation and PHH Environments Corporation are the respective successor corporations to Avenue Group, Inc., and PHH Group, Inc.

Effective March 31, 1988, PHH terminated Stat's employment. If Stat was terminated without cause, Paragraph 5(b) of the Employment Agreement provides that he receive the following sums:

> (i) his base salary and benefits for the remainder of the employment period and (ii) the executive's unpaid share of the bonus pools as specified in Schedule H of the Bonus Agreement dated May 30, 1986, among the company and the participants as defined in said Bonus Agreement, *whether or not the Pre–Tax Income Requirements have been met.*

(emphasis supplied). Schedule H of the Bonus Agreement specifies that Stat's share of a particular year's bonus pool is 13.5%. The other seven participants in the Bonus Agreement originally shared in the Bonus Pools in the following percentages:

| | |
|---|---|
| Byron H. Apple | 5.4 |
| John M. Bondeson | 4.1 |
| James B. Cohen | 4.1 |
| Frank B. Gorski | 4.1 |
| Theodore E. Kloss | 6.8 |
| Gary E. Peterson | 4.1 |
| Peter W. Shull | 8.1 |

Paragraph 1 of the Bonus Agreement defines the term "Bonus Pools":

> For each of the fiscal years of Avenue ending April 30, 1987, 1988, 1989, and 1990, there shall be a minimum earnings requirement (the "Minimum Requirement") of $700,000, $850,000, $1,000,000 and $1,220,000, respectively, and a bonus pool ("Bonus Pool") equal to the amount by which Pre–Tax Income (as defined in paragraph 2) for such year exceeds such Minimum Requirement, except that such Bonus Pool shall not exceed (a) for the fiscal year 1987, the sum of $185,000, (b) for fiscal year 1988, the sum of $185,000 plus the amount by which $185,000 exceeds the fiscal year 1987 Bonus Pool, (c) for fiscal year 1989, the sum of $185,000 plus the amount by which $370,000 exceeds the sum of the fiscal year 1987 and 1988 Bonus Pools, and (d) for the fiscal year 1990, the amount by which $550,000 exceeds the sum of the fiscal year 1987, 1988 and 1989 Bonus Pools. In no event, however, shall total composite bonus payments for all years combined exceed $550,000.

Paragraph 3 of the Bonus Agreement defines how each participant shares in the Bonus Pool:

> *Shares.* Each Participant shall be entitled to that share of the Bonus Pool for each of the foregoing fiscal years as indicated on one of the attached schedules labeled A through H bearing his name. Such share may be increased, at the discretion of Avenue and PHH Group, Inc. management, based on the Participant's performance and contribution to the Company and other relevant factors. In any event, however, the total amount paid to the Participants will equal the amount of the Bonus Pools earned for each year. A Participant must be employed by Avenue on the last day of the respective fiscal year in order to share in the Bonus Pool for such fiscal year, and if he is not so employed, the amount that would have represented his share shall be divided among the other Participants according to their respective percentages.

Stat is not entitled to participate in the Bonus Pool for fiscal year 1990 because he was not employed by PHH at the end of the 1990 fiscal year.

Based on these undisputed facts, the parties have filed cross-motions for summary judgment. Both parties agree that the only issue presented by their cross-motions for partial summary judgment is what bonus, if any, Stat would be entitled to receive if the trier of fact should determine that PHH terminated Stat without cause. Additionally, both parties agree that whether Stat was terminated with or without cause is a question for the trier of fact to decide.

## II. DISCUSSION

Resolution of the bonus issue necessarily hinges upon interpretation of certain language in the Employment and Bonus Agreements. Although both parties agree that certain language in the Employment and Bonus Agreements governs their rights, they differ in their respective inter-

pretations of that language. First, the parties disagree as to whether Stat is entitled to a bonus regardless of whether PHH has fiscal income in the fiscal years covered under the Bonus Agreement. Second, the parties disagree as to the relevant percentage to be used in calculating the amount of Stat's bonus. We address each of these issues in turn.[2]

### A. The Meaning of the Phrase "Whether or not the Pre–Tax Income Requirements have been met"

■ The parties disagree as to the meaning of the phrase "whether or not the Pre–Tax Income Requirements have been met," which modifies the bonus language in Paragraph 5(b)(ii) of the Employment Agreement. Stat contends that this language entitles him to a bonus regardless of whether PHH has income in fiscal years 1987, 1988 and 1989. Based on this interpretation, Stat argues that he is entitled to recover 31.375% of the maximum Bonus Pool of $555,000, pursuant to Paragraph 1 of the Bonus Agreement. According to Stat, the maximum bonus amount, $555,-000, applies to determine Stat's share of the Bonus Pool because no pre-tax income requirements limit the amount of his bonus.

PHH, on the other hand, contends that the language "whether or not the Pre–Tax Income Requirements have been met" only eliminates the Minimum Earnings Requirements imposed in Paragraph 1 of the Bonus Agreement. According to PHH, the disputed language does not mean that Stat receives a bonus whether or not PHH has earned income; rather, it means that Stat is entitled to receive his portion of the Bonus Pool regardless of whether the minimum earnings requirements have been met, but only if PHH has earned income during fiscal years 1987, 1988 and 1989. Moreover, PHH argues, in the event that Stat is entitled to any bonus at all for fiscal

years 1987, 1988 and 1989, he is only entitled to receive 13.5% of the Bonus Pool for those fiscal years under Paragraph 5(b)(ii) of the Employment Agreement and Schedule H of the Bonus Agreement.

In order to determine whether the language "whether or not the Pre–Tax Income Requirements have been met" is ambiguous—that is, whether it can reasonably be interpreted more than one way—the Employment and Bonus Agreements must be read as a whole. *See Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1334 (7th Cir.1988), (citing *United Equitable Ins. Co. v. Reinsurance Co. of America*, 157 Ill.App.3d 724, 109 Ill.Dec. 846, 850, 510 N.E.2d 914, 918 (1st Dist. 1987)). Phrased otherwise, the intent of the parties "must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by reviewing each part in light of the others." *Air Line Stewards and Stewardesses Assoc., Local 550 v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir.1983) (citing *LaThrop v. Bell Federal Savings & Loan Assoc.*, 68 Ill.2d 375, 378, 12 Ill.Dec. 565, 568, 370 N.E.2d 188, 191 (1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2818, 56 L.Ed.2d 768 (1978)). Under Illinois law, a contract is not rendered ambiguous merely because the parties do not agree on the proper interpretation of its terms. *See MacDonald–Smith v. FMC Corporation*, 713 F.Supp. 264, 268 n. 2 (N.D.Ill.1989), *aff'd*, 902 F.2d 37 (7th Cir. 1990) (citing Illinois law).

Guided by these standards, we examine the disputed language of the Employment and Bonus Agreements. Paragraph 1 of the Bonus Agreement imposes a minimum earnings requirement which must be met before there can be a bonus pool for a given year. The bonus pool equals the amount by which pre-tax income exceeds the minimum earnings requirement, subject to certain limitations spelled out in Para-

**2.** Because this is a diversity action, we are required to apply the law of Illinois. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Employment and Bonus Agreements state that Illinois law governs any dispute involving these contracts, and neither party has challenged these choice of law provisions. Moreover, the parties agree that Illinois law applies and that agreement, by itself, is sufficient to make Illinois law govern. *See City of Clinton v. Moffitt*, 812 F.2d 341, 342 (7th Cir.1987).

graph 1 of the Bonus Agreement. Reading the language from Paragraph 5(b)(ii) of the Employment Agreement which states that if terminated without cause, Stat will receive his unpaid share of the Bonus Pool "whether or not the Pre–Tax Income Requirements have been met," together with the language from Paragraph 1 of the Bonus Agreement regarding how the bonus pool is to be calculated, clearly indicates that without earned income, there could be no bonus pool. Given that fact, the phrase "whether or not the Pre–Tax Income Requirements have been met" is capable of only one reasonable interpretation: that Stat's bonus would not be subject to minimum earnings requirements.

To give effect to Stat's contention—that even if PHH loses money he still is guaranteed a bonus—would render the bonus agreement totally meaningless. Typically, a bonus is a reward, a premium paid for extraordinary work; it is not, as Stat suggests, "guaranteed additional compensation" regardless of whether his employer earns income.[3] To argue otherwise strains logic. Why would an employer agree to guarantee a bonus to an employee under circumstances in which it might have no earned income with which to pay the bonus? Paying Stat a bonus even if PHH lost money during the relevant fiscal years would not only undermine the purpose of the Bonus Agreement, but also would contravene sound business practice. While it makes sense that PHH would have waived the minimum earnings requirement in exchange for Stat's covenant not to compete, it makes no sense that PHH would have waived having earned income with which to pay Stat's bonus. To interpret the agreements otherwise would destroy whatever incentive might exist for PHH employees, including Stat, to improve the company's performance.

After reviewing the language of the Employment and Bonus Agreements as a whole, this Court finds that the phrase "whether or not Pre–Tax Income requirements have been met" means that PHH

has waived the "minimum earnings requirement" referred to in Paragraph 1 of the Bonus Agreement; it does not mean that PHH has guaranteed Stat a bonus regardless of whether PHH earned income during the relevant fiscal years. Accordingly, if the trier of fact determines that PHH terminated Stat without cause, then Stat is entitled to a bonus for fiscal years 1987, 1988 and 1989, but only if Avenue had earned income during those years. Thus, to the extent that the parties seek an interpretation of this aspect of the Employment and Bonus Agreements, the Court grants PHH's motion for partial summary judgment and denies Stat's motion for partial summary judgment.

### B. The Relevant Percentage for Determining the Amount of Stat's Bonus

The parties also dispute the relevant percentage to be used in calculating Stat's bonus. Stat contends that he is entitled to 31.375% of the entire Bonus Pool, whereas PHH contends that Stat is entitled to the 13.5% figure set forth in Schedule H of the Bonus Agreement and no more. Paragraph 3 of the Bonus Agreement and Paragraph 5(b)(ii) of the Employment Agreement both refer to the 13.5% figure in Schedule H as the relevant percentage for determining Stat's share of the Bonus Pool.

▇ Paragraph 3 of the Bonus Agreement, however, contains two modifications to the amounts referred to in Schedule H, and Stat claims that both of these modifications entitle him to an increased share of the bonus pool. First, Paragraph 3 of the Bonus Agreement provides that:

Each Participant shall be entitled to that share of the Bonus Pool for each of the foregoing fiscal years as indicated on one of the attached schedules labelled A through H bearing his name. *Such share may be increased, at the discretion of Avenue and PHH Group, Inc. management, based on the Participant's performance and contribution*

---

**3.** The Court finds it noteworthy that the word "guaranteed" never appears in either the Employment Agreement or the Bonus Agreement

insofar as Stat's entitlement to a bonus is concerned.

*to the Company and other relevant factors. In any event, however, the total amount paid to the Participants will equal the amount of the Bonus Pools earned for the year.*

Bonus Agreement at ¶ 3 (emphasis supplied). Schedules A through H, referred to in Paragraph 3 of the Bonus Agreement, set forth fixed percentages of the Bonus Pool to be distributed to the eight participants. These percentages total 50.2%. The remaining 49.8% of the Bonus Pool is the discretionary pool. Although it is clearly a discretionary pool, Stat claims that because the contract states that the entire pool will be distributed, he is entitled to his pro rata share of the discretionary bonus pool.

We disagree. The Bonus Agreement unequivocally states that distribution of a discretionary bonus is to be determined solely by PHH management. No single participant has the contractual right to receive this discretionary bonus unless PHH gives that participant a percentage of the discretionary funds. Thus, Stat's contention that he is entitled to a pro rata share of the 49.8% discretionary bonus pool for the relevant fiscal years is contrary to the plain language of Paragraph 3 of the Bonus Agreement.

█ Stat also contends that the last sentence in Paragraph 3 of the Bonus Agreement entitles him to a larger share of the bonus pool. That sentence provides that if a Bonus Agreement participant is not employed by Avenue on the last day of the relevant fiscal year, then the amount which would have represented his share shall be divided among the other participants ac-

cording to their respective percentages (designated in Schedules A through H). According to Stat, he and Peter W. Shull are the only remaining participants in the Bonus Pool.[4] Given this fact, Stat argues that he is entitled to his fixed percentage of 13.5% of the bonus pool, plus his pro rata share of the departed participants' share of the bonus pool.

We agree. Because Stat and Peter Shull are the only remaining participants in the Bonus Pool, the other six participants' fixed shares must be redistributed pro rata between Stat and Shull. Of the total fixed share of 50.2%, Stat's fixed share is 13.5% and Shull's fixed share is 8.1%. The other six participants' fixed share totalled 28.6%, which must be distributed pro rata between Stat and Shull. Thus, Stat is entitled to 62.5% of the departed participants' share of 28.6%, which equals 17.875%.[5] When added to Stat's fixed share of 13.5%, Stat is entitled to a total of 31.375% (13.5% + 17.875%) of the Bonus Pool for fiscal years 1987, 1988 and 1989, but only if Avenue had earned income in those years.[6]

### III.  CONCLUSION

In sum, for the reasons outlined, the Court specifically declares that under the terms of the Employment and Bonus Agreements, if the trier of fact should determine that PHH terminated Stat without cause, then Stat would be entitled to receive a bonus equal to 31.375% of Avenue's pre-tax earnings for each of the fiscal years ending April 30, 1987, 1988, and 1989, subject to the maximum limitations on each year's Bonus Pool as specified in Para-

---

4. PHH does not deny that of the eight original participants, Shull is the only one currently employed by PHH. PHH does, however, dispute that Stat and Shull are the only remaining participants in the Bonus Pool because PHH argues that Stat ceased being a participant when PHH terminated Stat for cause. Nevertheless, the parties have asked the Court to determine the amount of bonus Stat would be entitled to receive under the Employment and Bonus Agreements if the trier of fact should determine that PHH terminated Stat without cause; therefore, for purposes of making this determination, we must assume that PHH terminated Stat without cause.

5. Stat's fixed share, 13.5%, plus Shull's fixed share, 8.1%, equals 21.6%. Thus, Stat's pro rata share of the departed participants' fixed share is 62.5% (13.5% × 21.6% = 62.5%). 62.5% of 28.6% equals 17.875%. Consequently, Stat's share upon redistribution is 17.875% plus his original 13.5%, for a total of 31.375%.

6. Of course, this calculation is predicated upon the assumption that Stat and Shull were the only two remaining participants in the Bonus Pool for each of the three years.

graph 1 of the Bonus Agreement. Consistent with this interpretation of the agreements, Stat's motion for partial summary judgment is granted in part and denied in part, and PHH's motion for partial summary judgment is granted in part and denied in part.