FIFTH DIVISION
 Filed: 5/23/97










No. 1-95-3542

CARMEN HILLENBRAND and ) APPEAL FROM THE
JAMES G. UZZELL, ) CIRCUIT COURT OF
 ) COOK COUNTY
 Plaintiffs-Appellants, )
 )
 v. )
 )
MEYER MEDICAL GROUP, S.C., )
and HEALTH COST CONTROLS OF )
ILLINOIS, INC., ) HONORABLE
 ) JOHN K. MADDEN,
 Defendants-Appellees, ) JUDGE PRESIDING.


 JUSTICE HOFFMAN delivered the opinion of the court:
 The plaintiffs, Carmen Hillenbrand and James G. Uzzell, filed
this class action against the defendants, Meyer Medical Group, S.C.
(Meyer), Health Cost Controls of Illinois, Inc. (HCC), and Chicago
HMO, alleging that Meyer and HCC asserted an invalid and
unauthorized physician's lien against a third party recovery
received by Hillenbrand. Chicago HMO was dismissed from this
action and the plaintiffs have not appealed from that order. At
the hearing on Meyer and HCC's motions for summary judgment, the
trial court concluded that the plaintiffs' action was preempted by
federal law and entered judgment in favor of Meyer and HCC. 
Thereafter, the trial court denied the plaintiffs leave to file an
amendment to their complaint. The plaintiffs filed the instant
appeal from the summary judgment entered in favor of Meyer and HCC
and from the trial court's order denying leave to amend. We
reverse and remand.
 Hillenbrand, as a federal employee, received comprehensive
health care benefits under the Federal Employees Health Benefits
Act (FEHBA) (5 U.S.C. sec. 8901 et seq.). Those benefits were
administered by the United States Office of Personnel Management
(OPM). Pursuant to a contract between OPM and Chicago HMO,
Hillenbrand's health care benefits were provided through a Chicago
HMO "Prepaid Comprehensive Medical Plan" (Plan). Upon becoming a
member of the Plan, Hillenbrand received a brochure from Chicago
HMO which contained the following section, entitled "Third Party
Actions":
 "If a covered person is injured through the act or
 omission of another, the Plan [Chicago HMO] requires that
 it be reimbursed for the benefits provided, in an amount
 not to exceed the amount of the recovery, or that it be
 subrogated to the person's rights to the extent of the
 benefits received under this Plan, including the right to
 bring suit in the person's name." 
 Since Chicago HMO does not actually provide medical services,
it contracts with certain medical groups to perform such services
for Chicago HMO Plan members. Chicago HMO and Meyer entered into
a medical group service agreement (hereinafter "Service Agreement")
under which Meyer receives "capitation fees" from Chicago HMO
instead of billing Chicago HMO's Plan members directly for medical
services. Paragraph 5 of the section entitled "Duties of the
Group" explains the capitation fee arrangement: 
 "In no event shall GROUP [Meyer] bill, charge, seek
 compensation or have any recourse against the Member for
 service provided pursuant to this Agreement. GROUP
 agrees to accept as full compensation for providing
 health services the capitation fees under this Agreement
 and to look only to the Plan for payment, holding all
 Members harmless against any monetary claims (except for
 such co-payments as may be authorized by the applicable
 Certificate of Coverage). ***" 
 The Service Agreement also includes the following pertinent
language in paragraph 8 under "General Provisions":
 "The GROUP [Meyer] is responsible for ascertaining
 whether third parties are liable for health services
 provided to Members by the GROUP. The GROUP is also
 responsible for collecting any such amounts due from
 third parties for professional fees, such collections
 becoming the property of the GROUP." 
 In February 1991, Hillenbrand was injured in an accident. She
received medical treatment from Meyer through her Chicago HMO Plan. 
The medical services provided by Meyer totaled $1,779.64. In April
1992, HCC, Meyer's agent, sent Hillenbrand's personal injury
attorney, James Uzzell, a notice of physician's lien in the amount
of $1,779.64, which stated in pertinent part:
 "The health benefit plan provides that Meyer Medical
 Group is entitled to complete reimbursement of those
 benefits out of any settlement or judgment received by or
 on behalf of your client from any payments designed to
 compensate your client for medical expenses and injuries.
 *** The terms and conditions of the health benefit plan
 further provide for a legal and equitable lien on any
 proceeds received by settlement, judgment or otherwise."
 In July 1992, Uzzell negotiated a $6,744 settlement of
Hillenbrand's tort claim arising from her accident. The settling
party remitted one check in the amount of $4,964.36 payable to
Hillenbrand and Uzzell, representing her settlement over medical
expenses, and another check in the amount of $1,779.64 payable to
Hillenbrand, Uzzell, and HCC, representing the amount claimed for
reimbursement of her medical expenses. Hillenbrand and Uzzell did
not endorse the latter check and, instead, instituted the instant
action.
 Hillenbrand filed a complaint against Chicago HMO, Meyer, and
HCC, alleging that Meyer's physician's lien was invalid because
Chicago HMO had already compensated Meyer through the capitation
fee provision in the Service Agreement. Thereafter, Hillenbrand
filed an amended and second amended complaint. Count I of the
second amended complaint presented a claim for unjust enrichment,
count III alleged that the defendants' conduct violated the
Illinois Consumer Fraud and Deceptive Business Practices Act (815
ILCS 505/1 et seq. (West 1994)), and count IV alleged common law
fraud on the part of the defendants. Count II alleged
alternatively that, even if Meyer properly sought reimbursement of
the medical expenses, the common fund doctrine required that Meyer
bear a proportionate share of Uzzell's fees earned in negotiating
a recovery for Hillenbrand. 
 Meyer, HCC, and Chicago HMO each filed motions to dismiss. 
Chicago HMO argued that it had not filed a lien, had not sought any
third party recovery or subrogation regarding Hillenbrand's claim,
and, furthermore, had not assigned any rights to do so. The trial
court dismissed only Chicago HMO. 
 Meyer and HCC filed separate motions for summary judgment
which argued, among other things, that (1) the plaintiffs' claims
were preempted under section 8902(m)(1) of the FEHBA (5 U.S.C. sec.
8902(m)(1)), (2) no genuine issue of material fact existed as to
Meyer's right of reimbursement under the Service Agreement, and (3)
the plaintiffs failed to exhaust their administrative claims. The
trial judge concluded that the plaintiffs' claims were preempted
under the FEHBA and, accordingly, entered summary judgment in favor
of Meyer and HCC. In October 1995, the trial court denied the
plaintiffs' motion for leave to file an amendment to their
complaint which sought a declaratory judgment as to the validity of
Meyer's physician's lien. This appeal followed.
 Summary judgment is appropriate if the pleadings, depositions,
and affidavits show that no genuine issue of material fact exists
and that the moving party is entitled to judgment as a matter of
law. Maher & Associates, Inc. v. Quality Cabinets, 267 Ill. App.
3d 69, 77, 640 N.E.2d 1000 (1994). A triable issue of fact exists
where there is a dispute as to material facts or where the material
facts are undisputed but reasonable persons might draw different
inferences from those facts. In re Estate of Hoover, 155 Ill. 2d
402, 411, 615 N.E.2d 736 (1993). This court reviews a summary
judgment de novo. Hoover, 155 Ill. 2d at 411.
 Our review of the record indicates that the trial court's
finding that the plaintiffs' claims were preempted was premature
since a question of fact remains as to whether the Service
Agreement provides Meyer with a right of reimbursement. As
previously noted, Chicago HMO is clearly entitled to reimbursement
from third party recoveries received by its Plan members under the
"Third Party Actions" provision of its Plan. Since Meyer is not a
party to Chicago HMO's contract with Hillenbrand, we must determine
whether Chicago HMO assigned its right of reimbursement to Meyer
under the Service Agreement. Words which reflect an intent to
transfer an actionable right to reimbursement for valuable
consideration are sufficient to create an assignment. Dr. Charles
W. Smith III, Ltd. v. Connecticut General Life Insurance Co., 122
Ill. App. 3d 725, 727, 462 N.E.2d 604 (1984). Therefore, our
determination of whether Chicago HMO assigned its right to Meyer
depends on the language of the Service Agreement, specifically,
paragraph 8 under "General Provisions." 
 Where a dispute exists between the parties as to the meaning
of a contract provision, the threshold issue is whether the
contract is ambiguous. U S G Interiors, Inc. v. Commercial &
Architectural Products, Inc., 241 Ill. App. 3d 944, 947, 609 N.E.2d
811 (1993). This issue presents a question of law (United
Equitable Ins. Co. v. Reinsurance Co., 157 Ill. App. 3d 724, 728,
510 N.E.2d 914 (1987)) to be decided initially by the trial court
from an examination of the instrument as a whole before any
extrinsic evidence is considered (Country Service & Supply Co. v.
Harris Trust & Savings Bank, 103 Ill. App. 3d 161, 165, 430 N.E.2d
631 (1981)). However, because the issue of whether a contract is
ambiguous is a question of law, a reviewing court will
independently determine the matter unrestrained by the trial
court's judgment. In re Marriage of Arkin, 108 Ill. App. 3d 103,
108, 438 N.E.2d 957 (1982). 
 A contract is not ambiguous simply because the parties
disagree as to its meaning. Kokinis v. Kotrich, 74 Ill. App. 3d
224, 230, 392 N.E.2d 697, aff'd 81 Ill. 2d 151, 407 N.E.2d 43
(1980). An ambiguity is said to exist when the contract contains
language that is susceptible to more than one reasonable
interpretation. Farm Credit Bank v. Whitlock, 144 Ill. 2d 440,
447, 581 N.E.2d 664 (1991). If, after considering the language of
an agreement, a court determines that the document is ambiguous,
the court may then look beyond the agreement to ascertain the
intent of the parties. Northern Trust Co. v. Tarre, 86 Ill. 2d
441, 450, 427 N.E.2d 1217 (1981).
 Our examination of the Service Agreement leads us to conclude
that it is, indeed, susceptible of more than one reasonable
interpretation on the issue of Meyer's right to seek reimbursement
for the cost of the medical services rendered to Hillenbrand from
the tortfeasor causing her injuries. As stated earlier, paragraph
8 under "General Provisions" in the Service Agreement provides that
Meyer "is responsible for ascertaining whether third parties are
liable for health services provided to [Chicago HMO Plan] Members
***." (Emphasis added.) Paragraph 8 goes on to provide that Meyer
"is also responsible for collecting any such amounts due from third
parties for professional fees, such collections becoming the
property of" Meyer. 
 This provision could be interpreted, as Meyer suggests, to
mean that Chicago HMO granted Meyer the right to collect and retain
any sums due by a tortfeasor for medical services it rendered to a
Chicago HMO Plan member, a right possessed by Chicago HMO under the
terms of its Plan. The provision could also be interpreted to mean
that Meyer is charged with the responsibility of ascertaining if
any third party is also obligated to provide health services to a
Chicago HMO Plan member, and if so, Meyer can collect and retain
any amounts due from such third parties. Both interpretations are
reasonable in light of the language employed in the Service
Agreement, and either permits a harmonious construction of all of
the terms and conditions of the contract. Obviously, if the latter
interpretation comports with the actual intent of Meyer and Chicago
HMO at the time that they entered into the Service Agreement, Meyer
would only be entitled to seek reimbursement from other health care
plans or providers who were also obligated to render medical
services to Hillenbrand, and not from a tortfeasor who might be
liable for her medical expenses.
 Because the Service Agreement is ambiguous on this issue, its
interpretation becomes a question of fact, and extrinsic evidence
is admissible to explain and ascertain the intention of the
parties. See Farm Credit Bank, 144 Ill. 2d at 447. In support of
their motions for summary judgment, Meyer and HCC submitted the
affidavit of Gerald Brown, a former senior vice-president and chief
financial officer of HMO America and its wholly owned subsidiary,
Chicago HMO. Brown was a signatory to the Service Agreement, and
his affidavit was tendered to support the argument that Chicago HMO
assigned to Meyer its right to seek reimbursement from a tortfeasor
for benefits provided to Chicago HMO Plan members. Brown's
affidavit states, in pertinent part:
 "If a Member receives a recovery from a third party
 that caused his or her injury, then, to the extent of any
 recovery, [Chicago HMO] requires that the Member provide
 reimbursement for medical services that the Member has
 received under the Plan. This right of reimbursement is
 a standard feature in [Chicago HMO] contracts with
 Enrolling Units. ***
 The right of third party reimbursement serves the
 following purpose. If a Member already received medical
 care and later receives a recovery from a third party,
 then the Plan or Plan Providers that have paid for the
 Member's medical care should be reimbursed from any
 recovery. ***
 ***
 [Paragraph 8 of the Service Agreement] is intended
 to allow each Plan Provider, such as Meyer Medical, to
 exercise the rights of third party reimbursement for
 covered services under the Plan. This right of
 reimbursement is part of the compensation that Plan
 Providers bargain for and is in no way limited by the
 capitation fee arrangement.
 ***
 *** [Chicago HMO] itself cannot claim reimbursement
 for medical services that a Plan Provider rendered and/or
 paid for. Therefore, the Service Agreement (at paragraph
 8) gives that authority to the Plan Provider that
 actually rendered the service."
 The defendants also provided the affidavit of Patrick
McGinnis, a physician employed by Meyer, which stated in pertinent
part:
 "The fact that Meyer Medical receives capitation
 fees as 'full compensation' *** is not contrary to the
 right of reimbursement. Compensation in the form of
 capitation fees is a standard feature in HMO agreements. 
 'Full compensation' here means that Meyer Medical will
 look to [Chicago HMO] for all its payment and will not
 turn to the member for additional fees for service. 
 Therefore, in the situation when there is no third party
 recovery, Meyer Medical receives nothing further. If,
 however, there is a third party recovery, the Services
 (sic) Agreement states that Meyer Medical is entitled to
 reimbursement for the costs of medical care it has
 provided. Therefore, the right of reimbursement is
 separate from the right to receive capitation fees." 
 The plaintiffs submitted evidence contradicting these
affidavits. A letter that Meyer received from Philip Armstrong,
Director of Provider Relations and Development at Chicago HMO,
stated:
 "Dear Mr. Meyer,
 It has come to my attention that Health Cost
 Controls has been sending notices and correspondence to
 Chicago HMO Ltd. enrollees indicating that Meyer Medical
 Group, S.C., has a right to a lien on third party actions
 pursuant to Chicago HMO Ltd.'s Certificate of Coverage. 
 This is not the case. Chicago HMO Ltd.'s Certificate of
 Coverage refers only to third party rights regarding the
 'Plan' which is defined in the Certificate as 'Chicago
 HMO Ltd.", not the independent sites who contract with
 Chicago HMO Ltd. As you know, Meyer Medical Group and
 Chicago HMO Ltd. are totally separate and independent
 entities.
 Further, we have no contract with you that assigns
 Chicago HMO Ltd.'s rights under the Certificate to you. 
 Section 8 of our Medical Group Service Agreement dated
 January 25, 1988, states that ascertaining and collecting
 any amounts that might be due from any third parties are
 your Group's responsibility.
 Therefore, please cease immediately from
 representing to Chicago HMO Ltd. enrollees that you have
 any such rights under our Certificate of Coverage, and
 please also inform Health Costs Controls, or any other
 agents that you might have, to also cease such
 representations." (Emphasis in original.)
 In addition, Marilyn Floyd, Senior Legal Counsel at Chicago HMO,
stated in a letter to plaintiff's counsel dated January 5, 1993,
that Chicago HMO's Service Agreement does not assign its rights to
third-party recovery. 
 Since neither party presented uncontradicted evidence
sufficient for us to determine the meaning of the third-party
reimbursement provisions of the Service Agreement, we conclude that
a triable issue of fact exists concerning whether there has been an
assignment of reimbursement rights by Chicago HMO to Meyer. 
Therefore, we reverse the order of summary judgment in favor of the
defendants and remand this cause for further proceedings consistent
with this opinion.
 Given our disposition, we need not reach the additional claims
presented on appeal. We wish to emphasize that our analysis does
not require recourse to, nor interpretation of, the Chicago HMO
contract with Hillenbrand under FEHBA. Rather, we hold only that
the question of whether the Service Agreement constituted an
assignment to Meyer of Chicago HMO's right to seek reimbursement
from the tortfeasor who injured Hillenbrand is the threshold issue
that must be resolved in determining the validity of Meyer's
physician's lien in this case. Accordingly, we need not reach the
preemption issue at this time. See e.g. Allis-Chalmers Corp. v.
Lueck, 471 U.S. 202, 85 L.Ed.2d 206, 105 S. Ct. 1904 (1985).
 Last, we briefly observe that the determination of whether
Chicago HMO assigned its right of reimbursement to Meyer is one
which affects the rights of Chicago HMO. Given the trial court's
dismissal of this necessary party, a joinder problem is potentially
presented on remand of this action. 
 Reversed and remanded.
 HARTMAN, P.J., and HOURIHANE, J., concur.