In the Matter of the CELOTEX
CORPORATION, et al.,
Debtors.

The CELOTEX CORPORATION and
Carey Canada, Inc., Plaintiffs,

v.

AIU INSURANCE COMPANY,
et al., Defendants.

Bankruptcy No. 90–10016–8B1.
Adv. No. 91–40.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 15, 1994.

See also, 152 B.R. 667.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Charles P. Schropp, William R. Daniel, Schropp, Buell & Elligett, P.A., Jeffrey W. Warren, Bush, Rush, Gardner, Warren & Rudy, P.A., Tampa, FL, Deborah A. Swindells, Anderson, Kill, Olick & Oshinsky, Washington, DC, Nicholas J. Zoogman, Anderson, Kill, Olick & Oshinsky, New York City, Stephen A. Madva, Montgomery McCracken Walker & Rhoads, Philadelphia, PA, Bruce Bishop, Willcox & Savage, Norfolk, VA, George N. Wood, Vice President and Gen. Counsel, Celotex Corp., Tampa, FL, for Celotex Corp. and Carey Canada, Inc.

Sara Kistler, Asst. U.S. Trustee.

John W. Kozyak, Kozyak Tropin Throckmorton & Humphreys, P.A., Miami, FL, for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Boker, Ruppel & Burns, P.A., Clearwater, FL, for Unsecured Trade Creditors Committee.

William Knight Zewadski, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, FL, for Unofficial Asbestos Health Claim Co–Defendants Committee.

H.C. Goplerud, Honigman Miller Schwartz and Cohn, Tampa, FL, for Asbestos Health Claimants Committee.

James W. Greene, Kathleen Silbaugh, Bromley Greene & Walsh, Washington, DC, for Columbia Cas. Co., Employers Ins. of Wausau, Federal Ins. Co., Protective Nat. Ins. Co.

John A. Yanchunis, Blasingame, Forizs and Smiljanich, P.A., St. Petersburg, FL, and Stuart P. Ross, William H. Briggs, Jr., William E. O'Brian, Jr., Ross, Dixon & Masback, Washington, DC, for Continental Cas. Co., Transp. Ins. Co., Columbia Cas. Co., Ameri-

can Reinsurance Co., Eric Reinsurance Co., Zurich American Ins. Co.

Daniel C. Sauls, John A. Flyger, Steptoe & Johnson, Washington, DC, for Highlands Ins. Co., Old Republic Ins. Co., St. Paul Surplus Lines Ins. Co.

David C. McLauchlan, Andrew Kochanowski, Lord, Bissell & Brook, Chicago, IL, for Certain Underwriters at Lloyd's of London.

Deborah M. Paris, Paris & Hanna, P.A., Tampa, FL, and Robert J. Bates, Jr., Maryann C. Hayes, Stanley Figura, Bates, Meckler, Bulger & Tilson, Chicago, IL, for Eric Reinsurance Co.

Thomas B. Keegan, Robins, Kaplan, Miller & Ciresi, Chicago, IL and William Cleary, Mendes & Mount, New York City, and Gregory J. Willis, Bart Billbrough, Walton Lantaff Schroeder & Carson, Miami, FL, for Employers Mut. Cas. Co.

Robert Berkes, Barbara Hodous, Bodkin, McCarthy, Sargent & Smith, Los Angeles, CA, for Hartford, First State & Twin City.

Virginia Vermillion, Gleason McGuire & Shreffler, Chicago, IL, for Northbrook, as successor in interest for Allstate Ins. Co.

Rolf Gilbertson, Zeele & Larson, Minneapolis, MN, for Employers Ins. of Wausau.

Margaret Jones, Grippo & Eldon, Chicago, IL, for American Ins. Co. and Nat. Sur. Corp.

Elizabeth B. Sandza, Cynthia Andreason, LeBoeuf Lamb Greene & MacRea, Washington, DC, for Hudson Ins. Co. and Gibraltar Cas. Co.

Louis Shulman, William S. Daskam, IV, St. Petersburg, FL, for Continental Ins. Co., U.S. Fire Ins. Co., Intern. Ins. Co.

Rick Dalan, Clearwater, FL, for Royal Ins. Co.

Susan B. Morrison, Morrison Morris & Mills, Tampa, FL, for Barrett and London Market Companies.

Elizabeth G. Repaal, Harris Barrett Mann & Dew, St. Petersburg, FL, for Northbrook.

Thomas B. Mimms, Jr., MacFarlane Ferguson, Tampa, FL, for American Home Assur. Co., AIU Ins. Co., Highlands Ins. Co., Old Republic Ins. Co., Granite State Ins. Co., National Union Fire Ins. Co. of Pittsburgh, PA, Employers Mut. Casualty Co., American Ins. Co., National Sur. Co., St. Paul Surplus Lines Ins. Co.

Christine A. Nykiel, Jackson & Campbell, Washington, DC, for American Home Assur. Co., AIU Ins. Co., Granite State Ins. Co., Lexington Ins. Co., National Union Fire Ins. Co. of Pittsburgh, PA.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS MATTER came on for consideration upon the Plaintiff/Debtors' Motion for Partial Summary Judgment and Defendants' Motion for Partial Summary Judgment in the above captioned case. This Court has considered all arguments and evidence consistent with a ruling on a motion for summary judgment. *See Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court having considered the Motion, together with the record, finds the undisputable facts as follows:

Debtors, Celotex Corporation and Carey Canada, Inc., filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, in October 1990. At the time of filing of the petition there were over 140,000 asbestos related bodily injury lawsuits pending against Debtor. On that date, over 100 appeals were pending in asbestos related bodily injury cases in which Debtors and others were appealing adverse judgments. There were also numerous asbestos property damage claims that were in litigation in one form or another. There were some environmental claims that were being prosecuted, but most importantly, there were numerous cases being adjudicated even within alternative resolution facilities as relates the applicability of Debtors' insurance policies and their coverage of all the asbestos claims.

The Celotex Corporation is a major manufacturer of building and roofing products for residential and commercial use. They and their predecessors, over numerous decades, were involved in the manufacture of asbestos products up until the mid–1970s. Carey Canada, Inc., a subsidiary of Celotex Corporation, had been a miner of raw chrysolite asbestos fibers which were used extensively throughout the United States in various asbestos products. Through the course of merger with and acquisition of other corporations, Debtor has been involved in a multitude of lawsuits which have alleged damage caused by asbestos products sold by them or their predecessors. At the time of filing bankruptcy, Debtor was a judgment debtor in over 100 asbestos lawsuits and had posted various supersedeas bonds to stay collection of these judgments pending appeal. These issues have been extensively litigated in this Court and in three circuit courts of appeal.

In August 1992, this Court set a bar date as to all non-asbestos related claims. In the Celotex case, 6,267 claims were filed for a total of almost 3 billion dollars. In the Carey Canada case, 2,137 claims were filed totalling almost 2 billion dollars. In July 1993, in the Celotex case, a bar date was set as regards asbestos property damage claims. Approximately 780 claims in this case were filed totaling almost 20 billion dollars, with approximately 700 claims being filed in the Carey Canada case with its asbestos property damage claims of almost 8 billion dollars.

This Adversary Proceeding arises in the context of asbestos-related bodily injury, property damage, and environmental contamination claims and the respective liabilities of the insurers and Debtors. The instant motions are limited to interpretation of certain insurance policies in the bodily injury phase.[1]

1. The following insurers are defendants in the above captioned Adversary Proceeding:

| Insurer | Policy Date/Number | Exclusion Language |
| --- | --- | --- |
| American Excess Ins. Co. | 10/1/78–10/1/79: EUL 500–26–20 10/1/79–10/1/80: EUL 500–38–54 10/1/80–10/1/81: EUL 507–58–95 10/1/81–10/1/82: EUL 508–47–96 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |
| Columbia Casualty Co. | 10/1/78–10/1/79: RDX 416–93–97 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |
| Highlands Ins. Co. | 10/1/81–10/1/82: SR40746 | it is understood and agreed that such insurance as afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |
| Lexington Ins. Co. | 10/1/80–10/1/81: 5540631 10/1/81–10/1/82: 5570052 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |
| Lloyds/London Market | 10/1/79–10/1/80: 614/NC 8106 10/1/80–10/1/81: 614/NTA 234 10/1/81–10/1/82: 614/NTA 700 | it is understood and agreed that this policy shall not apply to liability arising out of: i) Asbestosis ... |

Debtors assert the exclusionary language of all policies at issue is unambiguous and the exclusion in each policy is limited to the singular asbestos-related disease of asbesto-sis. Defendants are insurance companies claiming exclusions to all asbestos-related bodily injury claims. They assert "asbesto-sis" was meant to exclude all asbestos-related diseases.[2]

| Midland Ins. Co. | 10/1/81–10/1/82: XC724609 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |
| National Union Fire Ins. Co. | 10/1/79–10/1/80: 122 6411<br>10/1/80–10/1/81: 122 6062<br>10/1/81–10/1/82: 118 5371/118 5372 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |
| Old Republic Ins. Co. | 10/1/81–10/1/82: OZX 11573 | the company shall not indemnify the insured for any sum which the insured shall be obligated to pay by reason of any liability for bodily injury, personal injury, or property damage caused by or arising out of asbestosis resulting from manufacturing, handling, distribution, sale, application, consumption or use of asbestos |
| Transit Casualty Co. | 10/1/80–10/1/81: SCU 955684<br>10/1/81–10/1/82: SCU 956054 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |

**2.** With respect to one insurance policy, Defendants urge this Court to adopt collateral estoppel on the issue of the meaning of "asbestosis" in their insurance policy, and to adopt the findings of the *Carey Canada, Inc. v. California Union Ins. Co.*, 708 F.Supp. 1 (D.D.C.1989) (*Carey Canada I*); *see also Carey Canada, Inc. v. California Union Ins. Co.*, 720 F.Supp. 1018 (D.D.C.1989) (*Carey Canada II*), *rev'd and remanded in part and aff'd in part*, 940 F.2d 1548 (D.C.Cir.1991) (*Carey Canada III*) (reversing application of subjective standard and holding the objective standard applied with respect to intent of the parties); *Highlands Ins. Co. v. Celotex Corporation*, 743 F.Supp. 28 (D.D.C.1990). There are at least two policies that are the same in the instant case as in the *Carey Canada* case. These are:

| Insurer | Policy Date/Number | Exclusion Language |
| --- | --- | --- |
| Columbia Casualty Co. | 10/1/78–10/1/79: RDX 416–93–97 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |
| National Union Fire Ins. Co. | 10/1/79–10/1/80: 122 6411 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |

As regards the *Highlands* case the following three policies are the same as in the instant case:

| Insurer | Policy Date/Number | Exclusion Language |
| --- | --- | --- |
| Columbia Casualty Co. | 10/1/78–10/1/79: RDX 416–93–97 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |
| Highlands Ins. Co. | 10/1/81–10/1/82: SR40746 | it is understood and agreed that such insurance as afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |

In the instant case, there is no question asbestosis is excluded from coverage under the Defendants' insurance policies at issue. The policies encompassed are for the periods of October 1978 through October 1982, and October 1, 1982 through October 1, 1984.[3] For policies from October 1982 through October 1984, the exclusion at issue is for "asbestosis and related diseases arising out of asbestos products." The linchpin of this analysis is determining whether the term asbestosis, as used in certain insurance policies, is ambiguous, and susceptible to more than one meaning. There are specific applicable jurisdictions this Court will consider with respect to the parties assertions of applicable law.[4]

## I. HOW COURTS HAVE DEALT WITH THE TERM "ASBESTOSIS"

Analysis must begin with the sole term "asbestosis," and ascertaining its meaning. It is not incumbent upon this Court to determine the medical meaning of asbestosis, but at a minimum understand how the term "asbestosis" has been used. While all policies under consideration use the term "asbestosis," the policies using "asbestosis" as the only exclusion are for the periods of October 1978 through October 1982, and October 1, 1982 through October 1, 1984.

Some decisions have described "asbestosis" with a simple dictionary definition,[5] while others have painstakingly received affidavits[6] and expert testimony which analyzed various medical reports, treatises and periodicals.[7] Courts have generally taken the posi-

| | | |
|---|---|---|
| National Union Fire Ins. Co. | 10/1/79–10/1/80: 122 6411 | such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis |

3. The following insurance company's language was the language that was the form followed as an exclusion for all policies from October 1, 1982, through October 1, 1984, which is the underlying policy for Jim Walter's Corporation:

| Insurer | Policy Date/Number | Exclusion Language |
|---|---|---|
| International Insurance Company | 10/1/82–10/1/83: 523–252321–2 10/1/83–10/1/84: | In consideration of the premium charged, it is hereby agreed that such insurance as is afforded by this policy shall not apply to any liability imposed upon the insured arising out of asbestosis and related diseases arising out of asbestos products. |

Debtors suggest another exclusion included in the October 1977 through October 1978 policy which refers to a class of diseases more discrete than all diseases caused by asbestos, and incorporated into Defendant's third claim for relief. The exclusion reads "arising out of asbestosis or any similar condition caused by asbestos." Although this Court undertook the herculean task of searching and reviewing the great magnitude of documents, there does not appear to be documents to support such an additional exclusion.

4. Under the Court's Order Granting Motion for Partial Summary Judgment on Choice of Law, entered November 24, 1992, *lex loci contractus* (the law of the jurisdiction where the contract is executed) is the appropriate choice of law in contract interpretation actions. Accordingly, the laws of the states of Florida, Illinois, New York, and Ohio shall be the appropriate choice of law. *See Celotex Corp. v. AIU Ins. Co. (In re Celotex)*, 152 B.R. 661, 664 (Bankr.M.D.Fla.1993).

5. *See Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 113 (D.C.Cir.1982); *Larson v. Johns–Manville Sales Corp.*, 140 Mich.App. 254, 365 N.W.2d 194, 195 (Mich.Ct.App.1985); *Wilber v. Owens–Corning Fiberglas Corp.*, 476 N.W.2d 74 (Iowa 1991) (blanket statement that "asbestosis" is separate and distinct from mesothelioma).

6. *Fearson v. Johns–Manville Sales Corp.*, 525 F.Supp. 671, 674 (D.D.C.1981); *Gore v. Daniel O'Connell's Sons, Inc.*, 17 Mass.App.Ct. 645, 461 N.E.2d 256, 259 (Mass.App.Ct.1983); *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020, 1022 (Md.1983); *Devlin v. Johns–Manville Corp.*, 202 N.J.Super. 556, 495 A.2d 495, 501 (N.J.Super.Ct.Law.Div.1985).

7. *Jackson v. Johns–Manville Sales Corp.*, 727 F.2d 506, 517 (5th Cir.1984); *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020, 1022 (Md.1983); *Sheppard v. A.C. & S. Co.*, 498 A.2d

tion asbestosis is a nonmalignant disease which depends on the presence of a fibrosis, or scarring process, which clogs the alveoli, or small airways to the lungs. This scar tissue is considered simply dead tissue, not being organized into cells, which does not have respiratory or nutrient circulation. *Insurance Co. of North America v. Forty–Eight Insulations, Inc.*, 451 F.Supp. 1230, 1236–37 (E.D.Mich.1978), aff'd; 633 F.2d 1212 (6th Cir.1980), aff'd on reh'g, 657 F.2d 814 (6th Cir.1981), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). In other words, asbestosis is not formed by the proliferation of malignant cells, or a cancer. *See* H.R.Rep. No. 14816, 90th Cong., 2d Sess. 349, 355 (1968).

Other decisions have found mesothelioma, which is one type of lung cancer, is caused by exposure to asbestos by inhalation of the fibers. Cancer, whether in the lung or in another form, including mesothelioma, are malignant conditions which may be caused by exposure to asbestos. These are living cells which multiply uncontrolled. Courts have not found scar tissue which causes asbestosis to be related to cancer. *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1083–85 (5th Cir.1973), cert. denied, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Forty–Eight Insulations, Inc.*, 451 F.Supp. at 1236–37.

The Fifth Circuit decision in *Borel* states asbestos inhalation can be the cause of both asbestosis, a respiratory ailment, as well as mesothelioma, a cancer. The court in *Borel* stated:

> [a]sbestosis has been recognized as a disease for over fifty years. The first reported cases of asbestosis were among asbestos textile workers.... In the United States, the first official claim for compensation associated with asbestos was in 1927. By the mid–1930's, the hazard of asbestosis as a pneumoconiotic dust was universally accepted.

*Id.* at 1083–84. The court found asbestosis cases were first reported in insulation workers as early as 1934.

The Circuit Court in *Borel* affirmed the District Court's holding that the danger of inhalation of asbestos dust was not, as a matter of law, sufficiently obvious to asbestos insulation workers to relieve manufacturers of a duty to warn, and each of the defendants whom were a cause in fact of some injury could be held jointly and severally liable. The Circuit Court affirmed the District Court's findings of fact and conclusions of law only after a thorough analysis which was based on extensive medical studies, treatises, as well as legislative hearings on the disease.[8] A heavy emphasis was placed on a

1126, 1128 (Del.Super.Ct.1985); *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021, 1025 (Pa.Super.Ct.1992); *Chevron v. Workers' Compensation Appeals Bd.*, 219 Cal.App.3d 1265, 1271, 268 Cal.Rptr. 699 (1990); *Mauro v. Owens–Corning Fiberglas Corp.*, 225 N.J.Super. 196, 542 A.2d 16, 20 (N.J.Super.Ct.App.Div.1988); *Potts v. Celotex Corp.*, 796 S.W.2d 678, 679 (Tenn.1990).

**8.** *See* Selikoff, Bader, Bader, Churg and Hammond, *Asbestosis and Neoplasia*, 42 Am.J.Med. 487 (1967); Selikoff, Churg & Hammond, *The Occurrence of Asbestosis Among Insulation Workers*, 132 Ann.New York Acad.Sc. 139 (1965); Ellman, *Pneumoconiosis*, 14 Brit.J.Radiol. 361 (1934); Dressen et al., *A study of Asbestosis in the Textile Industry*, Public Health Bull. No. 241 (1938).

*See Also*, H.R.Rep. No. 14816, 90th Cong., 2d. Sess. 349, 355 (1968). During Congressional hearings, Dr I.J. Selikoff of the School of Environmental Sciences Laboratory, Mt. Sinai School of Medicine, City University of New York, stated:

> In 1924, which is a little over 40 years ago, Dr. Cooke in England described a case of a woman dying of severe lung scarring who had spent 20 years in a textile factory, weaving asbestos, and in the next decade many similar cases were reported, so that by the mid–1930's the hazard of pneumoconiotic dust was pretty universally accepted.
>
> . Textile factories in this country, most of them in the southern part of our country, were also studied and our Public Health Service fully documented the very significant risks involved in asbestos textile factories and a classic report by Dressen and his colleagues which was published by the GPO in 1938. Precautionary measures were urged in this report and elimination of hazardous exposures were strongly recommended.
>
> As I sit here now, I am unhappy to say that unfortunately implementation of these recommendations has been haphazard and inadequate and that conditions and dangers so well recognized and so well described 40 years ago are still with us. It is an unhappy reflection on all of us—government, public health authorities, and my own medical profession—that at this time in the United States in the 1960's 7 percent of the deaths among insulation workers in this country are due to a completely preventable cause, pulmonary asbestosis.

published study that concluded "asbestosis and its complications are significant hazards among insulation workers." Selikoff et al., *supra* note 15 at p. 147. Asbestosis was distinguished from another less common asbestos-related disease, mesothelioma which is a form of lung cancer and may or may not occur in an individual having asbestosis. *Id.* at 1083. The court did not find asbestosis caused mesothelioma. *Id.*[9]

In Florida, *Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517 (Fla. 3d DCA 1985), is authoritative on the subject. The court in *Eagle–Picher*, held it is "widely accepted by the scientific community that asbestosis and cancer are not medically linked, that is, cancer is not an outgrowth or complication of asbestosis." *Id.* at 522. The court found authority in *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020, 1023 n. 4 (Md.1983), as a foundation for its conclusions with respect to the distinct nature of asbestosis as a disease.

In *Pierce*, the court relied upon the affidavit of a Chief Medical Examiner for the State of Maryland, Dr. Russell S. Fisher, who stated:

> The diseases of mesothelioma and lung cancer are also associated with prior exposure to asbestos by inhalation. Lung cancer is a malignant disease that involves the cells found within the substance of the lung

and the airways of the lung. It is a progressive disease which nearly always kills the victim within a year of its diagnosis, in the operable state. The duration of the developmental process of lung cancer from inception to gross clinical manifestation cannot be stated with absolute certainty but modern medical opinion indicates this time lag to be of the order of months to a year or two at the extreme. This kind of disease process is entirely different from the disease process involved with asbestosis, though they both may be associated with an individual's exposure to the mineral asbestos. It is a medically accepted fact that an individual who has been diagnosed with the disease of asbestosis will not inevitably contract either of the cancers mentioned above. It is also true that individuals who have been exposed to asbestos and who develop lung cancer or mesothelioma, as a result of such exposure, may well not have significant asbestosis. These two situations are possible because, although all three diseases are associated with the inhalation of asbestos fibers, there is at present time no medically accepted link between the development of malignant disease and the development of asbestosis.

■■■■ Courts taking up the issue have consistently recognized asbestosis to be a distinct and singular disease.[10]

---

**9.** The Eleventh Circuit adheres to Fifth Circuit precedent in existence prior to the split of the two circuits on October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

**10.** Although asbestosis and a disease such as mesothelioma are two distinct and separate diseases, it does not mean there are two separate causes of action. Both of these diseases, one non-malignant and the other malignant, may both be caused by exposure to asbestos. *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1083–85 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Insurance Company of North America v. Forty–Eight Insulations, Inc.*, 451 F.Supp. 1230, 1236–37 (E.D.Mich.1978), *aff'd*, 633 F.2d 1212 (6th Cir. 1980), *aff'd on reh'g*, 657 F.2d 814 (6th Cir.), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). All cited by Judge Pratt in *Carey Canada, Inc. v. California Union Insurance Co.*, 720 F.Supp. 1018, 1021 (D.D.C.1989), *rev'd and remanded in part and aff'd in part*, 940 F.2d 1548 (D.C.Cir.1991). "[A]sbestosis ... unambiguously would seem to refer to a separate disease caused

by asbestos and is distinct from plaques, mesothelioma, and bronchogenic carcinoma." *Id.* 940 F.2d at 1558. Courts, having found asbestosis not a cancerous process, have held subsequent discovery of lung cancer to be a separate and distinct disease not limited by statute of limitations period of the asbestosis cause of action. *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 119–20 (1982) (however, plaintiff is entitled to recovery of future consequences if it is more likely than not that such consequences will occur, not sufficient where estimation that 12% of asbestosis victims later contract peritoneal mesothelioma and 15% will contract pleural mesothelioma. *Citing* Selikoff, Churg & Hammond, *Relation Between Exposure to Asbestos and Mesothelioma*, 272 New England J.Med. 560, 562 (1965); *see also* M.L. Newhouse and G. Berry, *Predictions of Mortality from Mesotheliomal Tumors in Asbestos Factory Workers*, J.Ind.Med. 33:147 (1976)). The *Wilson* Court's question was characterized as being one of whether the "manifestation of any asbestos-related disease (in this case asbestosis) triggers the running of a separate, distinct, and later manifested diseases ...

## II. APPLICABLE LAW ON A CONTRACT TERMS USAGE

■ Notwithstanding the general judicial community's consideration of the term "asbestosis," the issue is whether "asbestosis" is an ambiguous term as a matter of law. Applicable law of Florida, Illinois, New York, and Ohio consistently hold contract language meaning must be determined from the face of the instrument. *Kolar v. Ray*, 142 Ill. App.3d 912, 97 Ill.Dec. 240, 243, 492 N.E.2d 899, 902 (Ill.App.Ct.1986); *State Farm Mutual Auto Ins. Co. v. Pridgen*, 498 So.2d 1245, 1248 (Fla.1986); *United Equitable Ins. Co. v. Reinsurance Co. of America, Inc.*, 157 Ill.App.3d 724, 109 Ill.Dec. 846, 850, 510 N.E.2d 914, 918 (Ill.App.Ct.1987); *Broadway Nat'l Bank v. Progressive Casualty Ins. Co.*, 775 F.Supp. 123, 126 (S.D.N.Y.1991). Unless a court finds a term to be ambiguous, extrinsic or parol evidence is not admissible.[11]

■ Courts in Illinois interpret language in an insurance policy according to its plain and ordinary meaning. *Dora Township v. Indiana Ins. Co.*, 78 Ill.2d 376, 36 Ill.Dec. 341, 342, 400 N.E.2d 921, 922 (Ill. 1980). A plain meaning analysis requires the term be associated with a meaning in a contract consistent with its common usage. Contracts are not rendered ambiguous simply because the parties to the contract disagree on a meaning. *American States Ins. Co. v. A.J. Maggio Co., Inc.*, 229 Ill.App.3d 422, 171 Ill.Dec. 263, 266, 593 N.E.2d 1083, 1086 (Ill.App.Ct.1992); *Shultz v. Delta–Rail Corp.*, 156 Ill.App.3d 1, 108 Ill.Dec. 566, 508 N.E.2d 1143 (Ill.App.Ct.1987); *Paist v. Town & Country Corp.*, 772 F.Supp. 412, 414 (N.D.Ill.1991); *Alpine State Bank v. Ohio Casualty Ins. Co.*, 941 F.2d 554, 559–60 (7th Cir.1991). Upon disagreement, the intent of the parties is determined from the language of the agreement alone. "Any particular interpretation that only the plaintiff may have envisioned at the time the contract was exe-

engendered by the same asbestos exposure." *Id.* 684 F.2d at 112. *See also Fusaro v. Porter Hayden Co.*, 145 Misc.2d 911, 916, 548 N.Y.S.2d 856, 859 (N.Y.Sup.1989); *Larson*, 399 N.W.2d at 6; *Sheppard v. A.C. & S. Co.*, 498 A.2d 1126, 1129–30 (Del.Super.Ct.1985); *Keene Corp. v. Sheppard*, 503 A.2d 192 (Del.1986); *Devlin v. Johns–Manville Corp.*, 202 N.J.Super. 556, 495 A.2d 495, 501 (N.J.Super.Ct.Law Div.1985); *Fearson v. Johns–Manville Sales Corp.*, 525 F.Supp. 671, 674 (D.D.C.1981); *Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517, 519 (Fla. 3d DCA 1985); *In re Moorenovich*, 634 F.Supp. 634, 637 (D.Me. 1986); *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 492 A.2d 1286, 1296 (Md.1985). Some courts allow only one cause of action from exposure to asbestos regardless of whether the diseases are related. Under Texas law, exposure to asbestos can give rise to only a single cause of action for all injuries that are caused by that exposure, whether or not all the injuries have become manifest at the time the cause of action arose. *Pecorino v. Raymark Industries, Inc.*, 763 S.W.2d 561, 574 (Tex.App.1988); *see also Graffagnino v. Fibreboard Corp.*, 776 F.2d 1307, 1309 (5th Cir.1985) *Cf. Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 315, n. 6, 399 N.W.2d 1 (Mich.1986) (did not decide whether a claimant who did file a suit based on asbestosis may file a second suit for cancer at a later date).

Defendants cite case law suggesting "asbestosis [sic] fibers caus[ed] the cancer" and diseases result from "exposure to asbestosis [sic]." *See Wooden v. Missouri Pacific Railroad Co.*, 862 F.2d 560, 563 (5th Cir.1989), and *Moll v. Abbott Laboratories*, 444 Mich. 1, 18, 506 N.W.2d 816,

825 (Mich.1993), respectively. This Court is not persuaded to follow Defendant's argument based on what appears to be a syntax or scriveners error. The fact the *Wooden* and *Moll* Courts used the term "asbestosis" when it appears they meant to use "asbestos," does not suggest asbestosis means more than a singular disease.

Moreover, Defendants cite courts which have avoided the scientific or precise meaning of "asbestosis" where there was no reason to make a distinction. This Court is equally unimpressed with obiter dictum. For example, in a Seventh Circuit opinion, the court stated asbestosis meant any asbestos-related disease. *Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1216 (7th Cir. 1984) (court used the term "asbestosis" to include any asbestos-related disease, but was not determining what "asbestosis" meant); *see also In re UNR Industries*, 725 F.2d 1111, 1113 (7th Cir.1984) (same).

11. Defendants suggest *Dimmitt Chevrolet, Inc. v. Southeast Fidelity Insurance Corp.*, 1992 WL 212008 (Fla.) stands for the proposition Florida courts allow extrinsic evidence to create ambiguity, more specifically policy and history of exclusionary language. However, *Dimmitt* has since been withdrawn and replaced with *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Insurance Corp.*, 636 So.2d 700 (Fla.1993), *rehearing denied* (1994). In the court's superseding opinion, the Florida Supreme court found it improper to create an ambiguity by using extrinsic evidence, and adopted the plain meaning of "sudden and accidental," is the criteria for determining whether insurance policy language is ambiguous.

cuted is immaterial. . . . [N]o word can be added to or taken from the agreement to change the plain meaning of the parties expressed therein." *American States*, 171 Ill. Dec. at 266, 593 N.E.2d at 1086. *See also Metro East Sanitary Dist. v. Village of Sauget*, 131 Ill.App.3d 653, 86 Ill.Dec. 760, 764, 475 N.E.2d 1327, 1331 (Ill.App.Ct.1985); *La Salle Nat'l Bank v. City of Warrenville*, 105 Ill.App.3d 643, 61 Ill.Dec. 396, 399, 434 N.E.2d 549, 552 (Ill.App.Ct.1982). Therefore, an unambiguous contract must be enforced as written.

 Other jurisdictions of applicable law adhere to the plain meaning view when interpreting contract terms. To be ambiguous in New York, there must be a term susceptible to more than one reasonable interpretation. *Broadway Nat'l Bank*, 775 F.Supp. at 126; *Rocon Mfg., Inc. v. Ferraro*, 605 N.Y.S.2d 591, 199 A.D.2d 999, 1000 (N.Y.App.Div.1993) (ambiguity of a term in an insurance policy); *American Home Products Corp. v. Liberty Mutual Ins. Co.*, 748 F.2d 760, 763 (2nd Cir.1984). "Where, as here, the contract's language admits of only one reasonable interpretation, the court need not look to extrinsic evidence of the parties' intent or to rules of construction to ascertain the contract's meaning." *American Home*, 748 F.2d at 765. *See also Wards Co., Inc. v. Stamford Ridgeway Assocs.*, 761 F.2d 117 (2d Cir.1985) (ordinary meaning that leaves no room for ambiguity will not be susceptible to contorted semanticism). In addition, courts in New York apply words used in insurance policies to be interpreted according to the plain meaning which a layman would ordinarily attach to them. *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 797 F.Supp. 176, 182 (E.D.N.Y.1992). Again, ambiguity is not established simply because the parties disagree. *United States v. .35 of An Acre of Land, More or Less, Situated in Westchester County, State of New York*, 706 F.Supp. 1064, 1070 (S.D.N.Y.1988).

> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices,

usages and terminology as generally understood in the particular trade or business. . . . It is axiomatic that if the language of an agreement is explicit and unambiguous the courts must give it its plain meaning.

*Id.* at 1070–71. *See also Omaha Indemnity Co. v. Johnson & Towers, Inc.*, 599 F.Supp. 215, 218 (E.D.N.Y.1984); *Kenston Management Co. Inc. v. Lisa Realty Co. (In re Kenston Management Co., Inc.)*, 137 B.R. 100 (Bankr.E.D.N.Y.1992).

 In Florida the plain meaning view is consistently applied in interpreting unambiguous contract terms. *Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Insurance Corp.*, 636 So.2d 700 (Fla.1993), *rehearing denied* (1994); *United States v. South Atlantic Production Credit Ass'n*, 606 So.2d 691, 695 (Fla. 1st DCA 1992); *Towne Realty, Inc. v. Safeco Ins. Co. of America*, 854 F.2d 1264 (11th Cir.1988); *BMW of North America v. Krathen*, 471 So.2d 585, 587 (Fla. 4th DCA 1985); *Florida State Bank of Tallahassee v. Honey*, 407 So.2d 1082, 1083 (Fla. 1st DCA 1982); *Drisdom v. Guarantee Trust Life Ins. Co.*, 371 So.2d 690, 692 (Fla. 3d DCA 1979); *Landis v. Mears*, 329 So.2d 323, 325–26 (Fla. 2d DCA 1976); *City of St. Petersburg v. Int'l Assoc. of Firefighters Local No. 747*, 317 So.2d 788, 789 (Fla. 2d DCA 1975); *L'Engle v. Scottish Union and Nat'l Fire Ins. Co.*, 48 Fla. 82, 37 So. 462, 467 (Fla.1904). Ordinary rules of construction require assessment of the "natural or plain meaning" of policy language. *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.*, 986 F.2d 1379, 1382 (11th Cir. 1993).

 Ohio courts also adhere to the "plain meaning" doctrine. *Sunstream Jet Express, Inc. v. International Air Service Co., Ltd.*, 734 F.2d 1258, 1264 (7th Cir.1984) (ambiguity must arise from the language of the contract itself); *Owens–Illinois, Inc. v. Aetna Casualty and Surety Co.*, 597 F.Supp. 1515 (D.D.C. 1984); *Gottlieb and Sons, Inc. v. Hanover Ins. Co.*, 1994 WL 144539 (Ohio Ct.App.1994) (considered to be ambiguous when, on its face, coverage is fairly susceptible to two different meanings); *Fireman's Fund Ins. Co. v. Mitchell–Peterson, Inc.*, 63 Ohio App.3d 319, 578 N.E.2d 851, 856 (Ohio Ct.

App.1989); *Seringetti Const. Co. v. City of Cincinnati,* 51 Ohio App.3d 1, 553 N.E.2d 1371, 1378 (Ohio Ct.App.1988); *American Druggists' Ins. Co. v. Equifax, Inc.,* 505 F.Supp. 66 (S.D.Ohio 1980). "[T]he construction of an insurance policy with respect to coverage of asbestos-related diseases is based on the terms of the policy, the principles embodied therein, and the expectations that the insured could have reasonably formed as an objective matter on the basis of the policies language." *Owens–Illinois v. Aetna,* 597 F.Supp. at 1519.

 All jurisdictions of applicable law apply the plain meaning of policy terms. If a term is clear on its face, and is not susceptible to more than one reasonable interpretation, the term may be scrutinized within the full scope of the policy. Where an analysis of a term, and the term within the full scope of a policy, can have but one meaning, the plain meaning must be employed. Therefore, ambiguity in an insurance policy exists only where the policy language is reasonably susceptible to more than one construction. In the instant case, Defendant must prove there is more than one reasonable interpretation of coverage to support a finding of ambiguity. *See Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.,* 757 F.2d 1172, 1174–75 (11th Cir.1985); *Thompson v. Amoco Oil Co.,* 903 F.2d 1118, 1120 (7th Cir.1990).

### III. AMBIGUITY

 This Court must determine if the term "asbestosis", viewed objectively, is ambiguous. The applicable law in the instant case requires this Court to follow the traditional approach to determine whether ambiguity exists in a contract. If a latent ambiguity arises, extrinsic evidence may be admitted to explain the parties' intent without adding to or contradicting the sanctity of the agreement.[12] Defendants suggest in their Reply in Support of Their Motion for Partial Summary Judgment, ambiguity can be created by extrinsic evidence under Illinois law. In *Federal Deposit Ins. Corp. v. W.R. Grace and Co.,* 877 F.2d 614 (7th Cir.1989), the court discussed Illinois law and use of extrinsic evidence where an "intrinsic", or "extrinsic" ambiguity can be created. While it is true some Illinois courts used this analysis to find an otherwise clear agreement ambiguous, the Supreme Court of Illinois resolved the question. In *Rakowski v. Lucente,* 104 Ill.2d 317, 84 Ill.Dec. 654, 657, 472 N.E.2d 791, 794 (Ill.1984), the court held extrinsic evidence was not permissible to demonstrate an ambiguity. In addition, this Court recognizes some courts have allowed extrinsic evidence for the limited use of determining ambiguity. *Economy Preferred Ins. Co. v. Jersey County Constr., Inc.,* 246 Ill.App.3d 387, 186 Ill.Dec. 233, 235, 615 N.E.2d 1290, 1292 (Ill.App.Ct.1993); *Zale Constr. Co. v. Hoffman,* 145 Ill.App.3d 235, 98 Ill.Dec. 708, 712, 494 N.E.2d 830, 834 (Ill.App.Ct.1986) (cases using extrinsic evidence to give liberal meaning are justified to ensure compensation to victims).

> [However,] [t]he older view, sometimes called the "four corners" rule, which excludes extrinsic evidence if the contract is clear "on its face," is not ridiculous. (There is ancient wisdom as well as ancient prejudice.) The rule tends to cut down on the amount of litigation, in part by reducing the role of the jury; for it is the jury that interprets contracts when interpretation requires consideration of extrinsic evidence.... The fact that parties to a contract disagree about its meaning does not show that it is ambiguous, for if it did, then putting contracts into writing would provide parties with little of no protection.

*Id.,* 877 F.2d at 621.

No courts of applicable law have addressed the question of ambiguity of the term "asbestosis," when used as an insurance policy exclusion. However, recently a court, in a jurisdiction other than ones already mentioned, has dealt with the term "asbestosis" as an exclusion in insurance policies. In a recent New Jersey case, the appellate court held the

---

12. Latent ambiguity in a policy term is where language is employed in a policy that is clear and intelligible and suggests a singular meaning, but some extrinsic fact or extraneous evidence creates a necessity for a reasonable interpretation of two or more possible meanings. Patent ambiguities appear from the face of the instrument and arise from a defect in language used. *Ace Electric Supply Co. v. Terra Nova Electric,* 288 So.2d 544 (Fla. 1st DCA 1973).

term asbestosis was not ambiguous. *Owens–Illinois, Inc. v. United Ins. Co.*, 264 N.J.Super. 460, 625 A.2d 1, 19–21 (N.J.Super.Ct.App.Div.1993). The policy excluded coverage for claims arising from asbestosis. *Id.* The court found the language to be "absolutely plain," and the disease asbestosis had long been known to the legal community as a specific disease. *Id.* 625 A.2d at 20. The court did not rely on extrinsic evidence as in *Carey Canada, Inc. v. California Union Ins. Co.*, 708 F.Supp. 1 (D.D.C.1989), and would not rely on parol evidence to find a genuine issue of material fact existed. *Owens–Illinois v. United*, 625 A.2d at 20. The court discussed in length, the plain meaning of the term "asbestosis" and affirmed the trial court's conclusion that there was no ambiguity as to the term "asbestosis."

■■■ Within the context of an entirely integrated policy, and being cognizant of the customs, practices, usages and scientific terminology, there is nothing to suggest "asbestosis" is an ambiguous term. Where a term is found to be unambiguous, there can be no inquiry into extrinsic evidence under applicable law because it would be contrary to its plain meaning. Courts will not admit parol testimony to construe an ambiguity forced into contract to strain apparent meaning of the language. *See Mitchell–Peterson*, 578 N.E.2d at 856 (ambiguity must arise from the language of the contract itself); *Rakowski*, 84 Ill.Dec. at 657, 472 N.E.2d at 794; *United Equitable*, 109 Ill.Dec. at 850, 510 N.E.2d at 919; *Sunstream Jet Express*, 734 F.2d at 1267–68; *Dimmitt Chevrolet*, 636 So.2d 700; *Mount Vernon Fire Ins.*, 797 F.Supp. at 182; *Rocon Mfg.*, 605 N.Y.S.2d at 592.

Defendants' have offered a plethora of affidavits regarding the original policy agreements. The difficulty of Defendants' argument is it attempts to avoid an objective treatment of policy terms, and actually suggest each individual policy may have had a meaning contrary to its wording. If Defendants' assertions were accurate, each of the many policies in issue in the instant case would have potentially different meanings, notwithstanding the same term being used. In addition, where would the inquiry stop. Under Defendants' view, any policy term could be ambiguous by offering evidence on subjective intent of a term's meaning. Defendants simply may not offer evidence to contradict the plain meaning of a policy term unless the term is ambiguous.

■■■ The meaning of "asbestosis" as determined by courts, and the applicable law on the plain meaning of unambiguous contract terms, dictates a finding "asbestosis" is a singular nonmalignant disease caused by asbestos inhalation. Debtors' evidence in support of their Motion for Summary Judgment supports this conclusion. This Court must adhere to the law of the applicable jurisdictions. In any of the relevant jurisdictions under analysis in the instant case, applicable law would determine from reading the policy and its exclusions "asbestosis" a singular disease and absolutely plain as to its meaning. There is no ambiguity in the term "asbestosis." [13]

## IV. ASBESTOSIS AND RELATED DISEASES ARISING OUT OF ASBESTOS PRODUCTS

The next issue is whether the policies after October 1982, where exclusionary language is for "asbestosis and related diseases arising out of asbestos products," can be susceptible to more than one reasonable interpretation.

In Debtors' Motion for Partial Summary Judgment they argue "asbestosis and related diseases arising out of asbestos products," does not mean all other asbestos-related dis-

---

**13.** Debtors suggest application of the *contra proferentum* rule applies in the instant case, whereby the court construes ambiguous contract terms against the drafter, and even more stringently applied against insurers. This rule, however, is at best a secondary rule, or a rule of last resort to "be invoked after all of the ordinary interpretative guides have been exhausted." *Farwell Const. Co. v. Ticktin*, 84 Ill.App.3d 791, 39 Ill. Dec. 916, 922, 405 N.E.2d 1051, 1057 (Ill.App. Ct.1980). "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule [*contra proferentum*] apposite." *State Farm Mutual Automobile Ins. Co. v. Pridgen*, 498 So.2d 1245, 1248 (Fla.1986). In light of this Court's ruling, a determination of the exclusionary language need not be considered under *contra proferentum*. Nonetheless, the doctrine if applicable would not suggest a different result.

eases. They argue the only diseases the 1982 through 1984 policy exclusion limits is coverage for diseases that are a direct result of contracting asbestosis. Defendants assert the wording added to the 1982 through 1984 policies broadens the exclusion for all "related diseases arising out of asbestos products."

■ This Court has determined the term "asbestosis" is not ambiguous and as defined refers to a singular disease which may or may not cause other diseases. Having determined the term asbestosis is not ambiguous, the next matter is resolving whether the alleged expanded exclusionary language is an ambiguity. We find it is not. Once it has been resolved that "asbestosis" is non-ambiguous, the language dealing with the term "asbestosis and related diseases arising out of asbestos products" has a clear meaning which establishes the exclusion is expanded to include any disease which is causally connected to asbestosis. It is not for this court, upon the Motion for Summary Judgment, to determine every category of disease which may be related to asbestosis. Such a matter is a factual one appropriately before this Court in the forthcoming evidentiary hearing. Its plain meaning does afford a conclusion it excludes all diseases which result only from contracting asbestosis. *See Economy Preferred Ins.*, 186 Ill.Dec. at 236, 615 N.E.2d at 1293; *Rigel v. Nat'l Casualty Co.*, 76 So.2d 285, 287 (Fla.1954) ("carcinoma or any disease of the breasts" deemed not to cover stomach cancer); *Marsh v. Metropolitan Life Ins. Co.*, 70 Ill.App.3d 790, 27 Ill. Dec. 158, 163, 388 N.E.2d 1121, 1126 (Ill.App. Ct.1979) (heroin addiction is not a disease encompassed by accidental death from disease).

Defendants' interpretation of "related diseases" seeks to encompass all asbestos-related diseases. Such an omnipresent term or interpretation would be an expansion of the clear meaning of both "asbestosis" and "re-

lated diseases." To find "related diseases" encompass more than diseases related to asbestosis, would suggests this Court find asbestosis means more than one disease. As discussed above, "asbestosis" is a singular disease. The general maxim *ejusdem generis*, while not a mandate for interpretation, establishes a consistent reference point which reinforces this courts findings.[14]

> Since the exclusion contains an enumeration of specific items followed by a more general phrase, the rule of *"ejusdem generis"* is applicable. Under the doctrine of *"ejusdem generis,"* when an enumeration of specific things is followed by some more general word or phrase, then the general word or phrase will usually be construed to refer to things of the same kind or species as those specifically enumerated. [Emphasis added]

*Transcon Trailers, Inc. v. Northland Ins. Co.*, 436 So.2d 380, 381 (Fla. 5th DCA 1983); *County of Columbia v. Continental Ins. Co.*, 595 N.Y.S.2d 988, 189 A.D.2d 391, 394 (1993); *Pruett v. La Salceda, Inc.*, 45 Ill.App.3d 243, 3 Ill.Dec. 917, 919, 359 N.E.2d 776, 778 (Ill. App.Ct.1977); *Kravis v. State Farm Fire and Casualty Co.*, 20 Ill.App.3d 483, 314 N.E.2d 577, 578 (Ill.App.Ct.1974); *Beagle v. Automobile Club Ins. Co.*, 18 O.O.2d 280, 176 N.E.2d 542 (Ohio Ct.App.1960). The key to this Court's analysis is the operative term "related." The analysis of the term for the applicable law must be performed under the plain meaning analysis.

■ Insurers offer insurance policies that exclude coverage for particular risks. This is an activity with which insurers are particularly adept, as they are in the business of understanding their risk. However, if an insurer seeks to preclude coverage for a particular disease, they must express the condition, like the one here involved, in language that should not be misunderstood. Such is not a recondite task. *Rigel*, 76 So.2d at 287.

---

14. Under *expressio unius est exclusio alterius*, this use of "related diseases" expresses another reference point regarding this Courts interpretation. *See generally Connecticut General Life Ins. Co. v. Moore*, 357 So.2d 475, 477 (Fla. 3rd DCA 1978); *Loftus v. Pennsylvania Life Ins. Co.*, 314 So.2d 159, 160 (Fla. 4th DCA 1975); *Wright v. Beacon Mutual Indemnity Co.*, 179 N.E.2d 547, 554 (Ohio Ct.App.1961); *Conway v. Country Casualty Ins. Co.*, 97 Ill.App.3d 768, 53 Ill.Dec. 175, 180, 423 N.E.2d 559, 564 (Ill.App.Ct.1981); *In re Yaxley*, 259 Ill.App.3d 544, 197 Ill.Dec. 249, 252, 631 N.E.2d 252, 255 (Ill.App.Ct.1994); *cf. Jackson v. Citizens Casualty Co. of New York*, 299 N.Y.S. 644, 647, 252 A.D. 393 (N.Y.App.Div. 1937) (applied to statutory construction).

See *Kirk v. Financial Security Life Ins. Co.*, 75 Ill.2d 367, 27 Ill.Dec. 332, 333, 389 N.E.2d 144, 145 (Ill.1978); *Moore v. Lomas Mortgage USA*, 796 F.Supp. 300, 302 (N.D.Ill. 1992); *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 313–14 (N.D.Ill.1991); *Continental Casualty Co. v. Armstrong World Indus., Inc.*, 776 F.Supp. 1296, 1301 (N.D.Ill. 1991); *see also State Farm Mutual Automobile Ins. Co. v. Schmitt*, 94 Ill.App.3d 1062, 50 Ill.Dec. 493, 495, 419 N.E.2d 601, 603 (Ill.App.Ct.1981) (insurer's burden to show that a claim falls within an exclusion since it is presumed that insured intended to obtain coverage).

■ This Court does not find the whole phrase "asbestosis and related diseases arising out of asbestos products," to be ambiguous, or susceptible to more than one reasonable meaning. The only reasonable interpretation of "asbestosis and related diseases arising out of asbestos products," is an exclusion for asbestosis and other diseases that result from asbestosis. This finding is consistent with this Court's ruling on the meaning of "asbestosis," and as applied in the plain meaning analysis above. The plain meaning rule applies to "asbestosis and related diseases arising out of asbestos products." *See Mitchell–Peterson*, 578 N.E.2d at 856; *Rakowski*, 84 Ill.Dec. at 657, 472 N.E.2d at 794; *United Equitable*, 109 Ill.Dec. at 850, 510 N.E.2d at 919; *Sunstream Jet Express*, 734 F.2d at 1267–68; *Dimmitt Chevrolet*, 636 So.2d 700; *Mount Vernon Fire Ins.*, 797 F.Supp. at 182; *Rocon Mfg.*, 605 N.Y.S.2d at 592.

There is no genuine issue of material fact remaining with respect to the issue of ambiguity of the phrase "asbestosis and related diseases arising out of asbestos products."

### V. COLLATERAL ESTOPPEL UNDER *CAREY CANADA* AND *HIGHLANDS*

Another issue that pervades this discussion is Defendants' assertion collateral estoppel applies with respect to the insurance policies at issue. It has been suggested *Carey Canada, Inc. v. California Union Ins. Co.*, 708 F.Supp. 1 (D.D.C.1989) (*Carey Canada I* ), *Carey Canada Inc. v. California Union Ins.*

*Co.*, 720 F.Supp. 1018 (D.D.C.1989) (*Carey Canada II* ) *rev'd and remanded in part and aff'd in part*, 940 F.2d 1548 (D.C.Cir.1991) (*Carey Canada III* ), and *Highlands Ins. Co. v. Celotex Corporation*, 743 F.Supp. 28 (D.D.C.1990) (*Highlands* ) precludes litigation of whether the term "asbestosis" is ambiguous, and Debtors' are thereby collaterally estopped from raising the issue with respect to the insurance policies at issue.

■ Federal law was applied in *Carey Canada* and *Highlands*, therefore the federal standard of collateral estoppel must be applied. *St. Laurent v. Ambrose*, 991 F.2d 672 (11th Cir.1993); *Halpern v. First Georgia Bank (In re Halpern)*, 810 F.2d 1061 (11th Cir.1987). The criteria for collateral estoppel to be applicable are:

1. Is the issue at stake must be identical to the one involved in the prior litigation;

2. Was the issue must have been actually litigated in the prior litigation;

3. The determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action; and

4. the standard of proof in the prior litigation must have been at least as stringent as the standard of proof in the later litigation.

*See Hoskins v. Yanks (In re Yanks)*, 931 F.2d 42, 43 n. 1 (11th Cir.1991); *Halpern*, 810 F.2d at 1064; *Miller v. Held (In re Held)*, 734 F.2d 628, 629 (11th Cir.1984); *see also Arabian American Oil Co. v. Scarfone*, 939 F.2d 1472 (11th Cir.1991).

Upon application of the first collateral estoppel element, the issues of the instant case must be identical to those in the *Carey Canada* decisions. In *Carey Canada I*, the court bifurcated its decision and addressed only the scope of the insurance exclusions of four (4) excess insurance carriers. The Defendants in the *Carey Canada I* decision, similar to the instant case, sought a determination the term "asbestosis" excluded coverage for all asbestos-related bodily injury claims.

From 1977 through 1980 Northbrook issued policies with an exclusion that reads, "[T]his policy shall not apply to claims

made against the insured arising out of asbestosis or any similar condition caused by asbestos." (emphasis supplied). Home's policy contains no endorsement concerning asbestos-related claims, but, as plaintiffs have recognized, the court has determined that Home's policy incorporates Northbrook's asbestos exclusions. *Carey Canada v. California Union Insurance Co.*, 83–1105. Mem. Opinion at 2 n. 1 (May 7, 1985). National Union's 1977–1978 policy period exclusion states, "it is understood and agreed that any bodily injury or property damage claim or claims arising out of all asbestos operations is excluded from the policy." (emphasis in original). Like Home's 1977 policy, National Union's 1979 policy contained no asbestos-related exclusion. However, as already noted, we previously held that this policy incorporates the asbestos-related exclusion of the umbrella policy sold to plaintiffs by the United States Fire Insurance Company (U.S. Fire). *Carey Canada v. California Union Insurance Co.*, 83–1105, Mem. Opinion at 2 n. 1 (May 7, 1985). The applicable U.S. Fire exclusion reads, "... this policy shall not apply to any liability imposed upon the insured arising out of ASBESTOSIS." (Emphasis in original). Finally, Columbia Casualty's exclusion provides that its policy "shall not apply to liability imposed upon the insured arising out of asbestosis."

*Carey Canada I,* 708 F.Supp. at 2–3.

■ Only the National Union's, and the Columbia policies for the period of 1978–1979 were the subject of a prior ruling in *Carey Canada I.* The same policies, as well as Highlands 1981–1982 were the subject of a ruling in *Highlands,* 743 F.Supp. at 33. The other policies, and policy periods, in the instant case are clearly not the same as presented in any of the *Carey Canada,* or the *Highlands* decisions.[15] Therefore, collateral estoppel may only be applied to the policies

of National Union, and Columbia, and Highlands.

■ On appeal of the *Carey Canada I and II,* the Circuit Court appeared to have difficulty with the District Court's decision and remanded the case to determine whether "asbestosis" was objectively ambiguous. *Carey Canada III,* 940 F.2d at 1554. The court stated:

We conclude, however, that the District Court erred in its ultimate legal conclusion with regard to the 1979 National Union Policy and the Columbia Causality Policy because the court failed to determine that the term "asbestosis" is ambiguous based on objective evidence external to the pre-contractual views of the parties themselves, that in a broader context, *e.g.,* the insurance industry, public records, medical definitions, and the post-contractual course of performance, the term was used to mean more than the single non-cancerous disease asbestosis at the time the parties contracted.

*Id.* at 1554.[16]

[W]e vacate and remand the case for findings on the question whether the term "asbestosis" was used ambiguously in the insurance industry at the time the Columbia Casualty Policy and 1979 National Union Policy were written.

*Id.* at 1560. Because of the Circuit Court's ruling, it appears *Carey Canada I* and *Carey Canada II* do not have a preclusive effect on the instant case since there has been no final determination on the merits as to the issue of ambiguity of the term "asbestosis." Additionally, seeking collateral estoppel in the instant case based upon the *Highlands* decision, cannot take place. In *Highlands,* the district court's ruling was based upon its ruling in *Carey Canada II,* which was re-

---

15. *See* note 2, *supra.*

16. This Court recognizes some courts have allowed extrinsic evidence for the limited use of determining ambiguity. *Economy Preferred Ins. Co. v. Jersey County Constr.,* 246 Ill.App.3d 387, 186 Ill.Dec. 233, 235, 615 N.E.2d 1290, 1292 (Ill.App.Ct.1993); *Zale Constr. Co. v. Hoffman,*

145 Ill.App.3d 235, 98 Ill.Dec. 708, 712, 494 N.E.2d 830, 834 (1986) (cases using extrinsic evidence to give liberal meaning were justified to ensure compensation to victims). There was no discussion of limited use of extrinsic evidence for the purpose of determining ambiguity in any of the *Carey Canada* decisions.

versed on the issue of objective interpretation of ambiguity.[17]

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Debtors' Motion for Partial Summary Judgment be, and the same is hereby, granted. There are no material issues of fact remaining with respect to the plain meaning of the term "asbestosis" and the phrase "asbestosis and related diseases arising out of asbestos products," and these terms are not ambiguous. It is further

**17.** Even if collateral estoppel were available to Defendants in the instant case, it would only be applicable to certain findings of the District Court. These findings of the District Court would not be relevant to the issues herein in light

ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Partial Summary Judgment be, and the same is hereby, denied.

DONE AND ORDERED.

of this Court's ruling that extrinsic evidence may not be used to show ambiguity.